Cervante Pearson v. State of Maryland, No. 49, September Term, 2013

**VOIR DIRE – VICTIM OF CRIME – STRONG FEELINGS – MEMBER OF LAW ENFORCEMENT AGENCY –** Court of Appeals held that: (1) trial court need not ask during *voir dire* whether any prospective juror has ever been victim of crime; (2) on request, trial court must ask during *voir dire*: "Do any of you have strong feelings about [the crime with which the defendant is charged]?"; and (3) where all of State's witnesses are members of law enforcement agencies and/or where basis for conviction is reasonably likely to be testimony of members of law enforcement agencies, on request, trial court must ask during *voir dire*: "Have any of you ever been a member of a law enforcement agency?"

IN THE COURT OF APPEALS

OF MARYLAND

No. 49

September Term, 2013

_____

CERVANTE PEARSON

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts,

JJ.

_____

Opinion by Watts, J.
Harrell, J., concurs.
Adkins and McDonald, JJ., dissent.

_____

Filed:  February 21, 2014

We decide whether, on request, a trial court must ask during *voir dire* whether any prospective juror has ever been: (I) the victim of a crime; or (II) a member of a law enforcement agency.

We hold that: (I) a trial court need not ask during *voir dire* whether any prospective juror has ever been the victim of a crime, but, on request, a trial court must ask during *voir dire*: "Do any of you have strong feelings about [the crime with which the defendant is charged]?"; and (II) where all of the State's witnesses are members of law enforcement agencies and/or where the basis for a conviction is reasonably likely to be the testimony of members of law enforcement agencies, on request, a trial court must ask during *voir dire*: "Have any of you ever been a member of a law enforcement agency?"

## BACKGROUND

The State, Respondent, charged Cervante Pearson ("Pearson"), Petitioner, with various drug-related crimes. Before a jury trial in the Circuit Court for Baltimore City ("the circuit court"), Pearson's co-defendant filed proposed *voir dire* questions, including: "Have you, any member of your family, [a] friend, or [an] acquaintance been the victim of a crime? [] Do you know anyone who is employed in the police department, prosecutor's office[,] or other law-enforcement agency? [] Were you ever a member of a law-enforcement agency, either civilian or military?" (Paragraph breaks omitted). The circuit court declined to ask any of these three proposed *voir dire* questions. Pearson excepted to the circuit court's declining to ask each of the three proposed *voir dire* questions.

During *voir dire*, the circuit court asked: (1) "Does any member of the panel hold

such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts of this trial where narcotics violations have been alleged?"; and (2) "[W]ould any member of the jury panel be inclined to give either more or less weight to the testimony of a police officer than to any other witness in the case, merely because the witness is a police officer?"

At trial, all of the State's witnesses were members of the Baltimore City Police Department. Officer Christopher Faller ("Officer Faller") testified that on May 7, 2008, he and other law enforcement officers executed a search warrant for a residence at 1727 East Oliver Street in Baltimore City. Officer Faller testified that, inside the residence, Pearson was using a razorblade to "cut[] a white rock substance." As an expert in "chemistry and analysis of narcotics[,]" Anthony Rumber ("Rumber") testified that the white rock substance tested positive for cocaine.

The jury convicted Pearson of various drug-related crimes. Pearson appealed, and, by majority, a panel of the Court of Special Appeals affirmed, holding that the circuit court did not abuse its discretion in declining to ask the three proposed *voir dire* questions. The Honorable Irma S. Raker dissented, opining that the circuit court abused its discretion in declining to ask during *voir dire* whether any prospective juror had ever been a member of a law enforcement agency. Pearson petitioned for a writ of *certiorari*, which this Court granted. See Pearson v. State, 432 Md. 211, 68 A.3d 286 (2013).

## DISCUSSION

### I.

Pearson contends that the circuit court abused its discretion in declining to ask

during *voir dire* whether any prospective juror had ever been the victim of a crime. Specifically, Pearson argues that the "victim" *voir dire* question is reasonably likely to reveal specific cause for disqualification. Alternatively, Pearson asserts that the "victim" *voir dire* question would facilitate the exercise of peremptory challenges.

The State responds that the circuit court did not abuse its discretion in declining to ask during *voir dire* whether any prospective juror had ever been the victim of a crime. Specifically, the State contends that the "victim" *voir dire* question is not reasonably likely to reveal specific cause for disqualification. The State argues that the "strong feelings" *voir dire* questions make the "victim" *voir dire* question unnecessary. The State asserts that facilitating the exercise of peremptory challenges is not a proper purpose of *voir dire* in Maryland.

An appellate court reviews for abuse of discretion a trial court's decision as to whether to ask a *voir dire* question. See Washington v. State, 425 Md. 306, 314, 40 A.3d 1017, 1021 (2012) ("We review the trial [court]'s rulings on the record of the voir dire process as a whole for an abuse of discretion[.]" (Citation omitted)).

A defendant has a right to "an impartial jury[.]" U.S. Const. amend. VI; Md. Decl. of Rts. Art. 21. *Voir dire* (*i.e.*, the questioning of prospective jurors) "is critical to" implementing the right to an impartial jury. Washington, 425 Md. at 312, 40 A.3d at 1020 (citation omitted).

Maryland employs "limited voir dire." Id. at 313, 40 A.3d at 1020 (citation omitted). That is, in Maryland, the sole purpose of *voir dire* "is to ensure a fair and impartial jury by determining the existence of [specific] cause for disqualification[.]" Id.

at 312, 40 A.3d at 1020 (citations omitted). Unlike in many other jurisdictions, facilitating "the intelligent exercise of peremptory challenges" is not a purpose of *voir dire* in Maryland. Id. at 312, 40 A.3d at 1020 (citations omitted). Thus, a trial court need not ask a *voir dire* question that is "not directed at a specific [cause] for disqualification[ or is] merely 'fishing' for information to assist in the exercise of peremptory challenges[.]" Id. at 315, 40 A.3d at 1022 (citation omitted).[1]

On request, a trial court must ask a *voir dire* question if and only if the *voir dire* question is "reasonably likely to reveal [specific] cause for disqualification[.]" Moore v. State, 412 Md. 635, 663, 989 A.2d 1150, 1166 (2010) (citation omitted). There are two categories of specific cause for disqualification: (1) a statute disqualifies a prospective juror; or (2) a "collateral matter [is] reasonably liable to have undue influence over" a prospective juror. Washington, 425 Md. at 313, 40 A.3d at 1021 (citation omitted). The latter category is comprised of "biases directly related to the crime, the witnesses, or the defendant[.]" Id. at 313, 40 A.3d at 1021 (citation omitted).

On request, a trial court must ask during *voir dire* whether any prospective juror

---

[1]Because we resolve on other grounds the issues regarding the "victim" and "member of a law enforcement agency" *voir dire* questions, we do not address Pearson's contention that Maryland should discontinue limited *voir dire* by allowing *voir dire* to facilitate the intelligent use of peremptory challenges. Further, it would be imprudent for us to address this far-reaching issue without the benefit of study regarding the possible ramifications. We are unaware of any such study, and, in response to questions from the Honorable Glenn T. Harrell, Jr. at oral argument, both parties stated that they were unaware of any such study, aside from anecdotal evidence regarding California's transition to limited *voir dire* in criminal cases. To gather more information on the important issue of whether to maintain limited *voir dire*, we would refer the issue to the Standing Committee on Rules of Practice and Procedure for its consideration and recommendation.

has had an experience, "status, association, or affiliation[,]" State v. Thomas, 369 Md. 202, 211, 798 A.2d 566, 571 (2002) (citation omitted), if and only if the experience, status, association, or affiliation has "a *demonstrably strong correlation* [with] a mental state that gives rise to [specific] cause for disqualification." Curtin v. State, 393 Md. 593, 607, 903 A.2d 922, 931 (2006) (emphasis in original) (citation omitted). For example, in Yopps v. State, 234 Md. 216, 221, 198 A.2d 264, 267, cert. denied, 379 U.S. 922 (1964), a burglary case, this Court held that the trial court did not abuse its discretion in declining to ask during *voir dire* whether any prospective juror or anyone in any prospective juror's family had ever been the victim of a burglary. This Court stated that the proposed *voir dire* question "did not relate to a [specific] cause [for] disqualification[.]" Yopps, 234 Md. at 221, 198 A.2d at 267.

Similarly, in Perry v. State, 344 Md. 204, 217-19, 686 A.2d 274, 280-81 (1996), cert. denied, 520 U.S. 1146 (1997), a murder case, this Court held that the trial court did not abuse its discretion in declining to ask during *voir dire* whether any prospective juror, anyone in any prospective juror's family, or any prospective juror's "close personal friend" had ever been "a juror, witness, victim or defendant" in "any criminal proceeding." Instead, the trial court asked during *voir dire* whether any prospective juror, anyone in any prospective juror's family, or any prospective juror's "close personal friend" had ever been "a juror, witness, victim or defendant" in "any criminal homicide or aggravated assault proceeding[.]" Perry, 344 Md. at 217-18, 686 A.2d at 280. This Court stated:

**A [prospective] juror's having had prior experience as a juror, witness, victim or defendant in a criminal proceeding of any kind, or in one involving a crime of violence, is not *per se* disqualifying.** It is even less tenable to argue that a [prospective] juror is disqualified simply because of the experience of a member of the prospective juror's family or on the part of a close personal friend.

Id. at 218, 686 A.2d at 281 (citing Yopps, 234 Md. at 221, 198 A.2d at 267) (emphasis

added). This Court also stated:

A trial court's process of determining whether a proposed inquiry is *reasonably* likely to reveal disqualifying partiality or bias includes **weighing the expenditure of time and resources in the pursuit of the reason for the response to a proposed *voir dire* question against the likelihood that pursuing the reason for the response will reveal bias or partiality.** Here, the charges against [the defendant] were murder and conspiracy to commit murder. . . . Without abusing its discretion, the [trial] court could conclude under the circumstances here that there was not a reasonable likelihood of uncovering a disqualification based on some [prospective juror]'s connection, even as a victim, to some other class of crime.

Perry, 344 Md. at 220, 686 A.2d at 282 (some emphasis added).

Here, consistent with existing case law, for three reasons, we conclude that a trial

court need not ask during *voir dire* whether any prospective juror has ever been the

victim of a crime.

First, a prospective juror's experience as the victim of a crime lacks "a

*demonstrably strong correlation* [with] a mental state that gives rise to [specific] cause

for disqualification." Curtin, 393 Md. at 607, 903 A.2d at 931 (emphasis in original)

(citation omitted). See Perry, 344 Md. at 218, 686 A.2d at 281 (A prospective "juror's

having had prior experience as a . . . victim . . . in a criminal proceeding of any kind . . . is

not *per se* disqualifying."); Yopps, 234 Md. at 221, 198 A.2d at 267 (In a burglary case,

this Court held that the trial court did not abuse its discretion in declining to ask during *voir dire* whether any prospective juror or anyone in any prospective juror's family had ever been the victim of a burglary.). Thus, the "victim" *voir dire* question (as well as the inevitable follow-up questions) "merely [allow the defendant to] 'fish[]' for information to assist in the exercise of peremptory challenges[.]" Washington, 425 Md. at 315, 40 A.3d at 1022 (citations omitted).

Second, the "victim" *voir dire* question may consume an enormous amount of time. See Perry, 344 Md. at 219, 686 A.2d at 281 (The trial court noted that the "victim" *voir dire* question "provokes [] a huge response which would require follow-up questions galore, and we would have to sit here and listen to each incident that the prospective juror has experienced over [his or her] lifetime[.]"). Many (if not most) prospective jurors have been the victims of some kind of crime. Additionally (as Pearson concedes), the "victim" *voir dire* question necessitates that the trial court ask at least two "follow-up" questions of every single prospective juror who responds affirmatively.[2] In deciding whether to ask a proposed *voir dire* question, a trial court should "weigh[] the **expenditure of time and resources** in the pursuit of the reason for the response to [the] proposed *voir dire* question against the likelihood that pursuing the reason for the response will reveal bias or partiality." Perry, 344 Md. at 220, 686 A.2d at 282 (emphasis added).

---

[2]Specifically, the trial court would need to ask: (1) what the crime was of which the prospective juror had been the victim; and (2) whether the prospective juror's experience would prevent the prospective juror from fairly and impartially weighing the evidence.

- 7 -

Third, this Court has already held that, on request, a trial court must ask during *voir dire* whether any prospective juror has "strong feelings about" the crime with which the defendant is charged. State v. Shim, 418 Md. 37, 54, 12 A.3d 671, 681 (2011). The "strong feelings" *voir dire* question makes the "victim" *voir dire* question unnecessary by revealing the specific cause for disqualification at which the "victim" *voir dire* question is aimed.[3]

Despite this Court's holding in Shim, 418 Md. at 54, 12 A.3d at 681, however, we conclude that, here, the "strong feelings" *voir dire* question (*i.e.*, "Does any member of the panel hold such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts of this trial where narcotics violations have been alleged?") was phrased improperly.[4] We realize that the "strong

---

[3]Thus, we are unpersuaded by Pearson's reliance on hypothetical situations in which: (1) a drug dealer had assaulted a prospective juror's son; and (2) a drug user had stolen from a prospective juror. If either experience constituted specific cause for disqualification, then the prospective jurors would respond affirmatively to the "strong feelings" *voir dire* question. An appellate court presumes that prospective jurors are honest in deciding whether to respond affirmatively to a *voir dire* question. See generally Dillard v. State, 415 Md. 445, 465, 3 A.3d 403, 415 (2010) ("Jurors generally are presumed to follow the [trial] court's instructions[.]" (Citation omitted)); see also Curtin, 393 Md. at 617 n.1, 903 A.2d at 936 n.1 (Bell, C.J., dissenting) ("My experience, ten years, as a trial judge, is that the vast majority of [prospective juror]s take seriously the oath and endeavor mightily, even at the risk of embarrassment, to answer truthfully the questions put to them.").

[4]Although Pearson does not specifically contend that the "strong feelings" *voir dire* question was phrased improperly, the issue of the "strong feelings" *voir dire* question's phrasing is before this Court. An appellate court "review[s a] trial [court]'s rulings on the record of the voir dire process **as a whole** for an abuse of discretion" "to determine whether the matter has been fairly covered." Washington, 425 Md. at 313-14, 40 A.3d at 1021 (emphasis added) (citations omitted). Indeed, here, the State embraced this principle by: (1) consolidating all of the questions presented into one: "Did the trial (Continued...)

- 8 -

feelings" *voir dire* question was phrased exactly as this Court mandated in <u>Shim</u>, 418 Md. at 54, 12 A.3d at 681–"When requested by a defendant, and regardless of the crime, the [trial] court should ask the general question, 'Does any member of the jury panel have such strong feelings about [the charges in this case] that it would be difficult for you to fairly and impartially weigh the facts.'" (Brackets in original).

In retrospect, however, it is apparent that the phrasing of the "strong feelings" *voir dire* question in <u>Shim</u> clashed with existing precedent. <u>See</u> <u>State v. Green</u>, 367 Md. 61, 79, 785 A.2d 1275, 1285 (2001) ("[I]t is sometimes advisable to correct a decision . . . if it is found that the decision is clearly wrong and contrary to other established principles." (Citations and internal quotation marks omitted)). Specifically, the phrasing of the "strong feelings" *voir dire* question in <u>Shim</u> was at odds with <u>Dingle v. State</u>, 361 Md. 1, 21, 5, 759 A.2d 819, 830, 821 (2000), in which we held that the trial court abused its discretion in asking during *voir dire* such compound questions as:

> Have you or any family member or close personal friend ever been a victim of a crime, and if your answer to that part of the question is yes, would that fact interfere with your ability to be fair and impartial in this case in which the state alleges that the defendants have committed a crime?

This Court noted that:

> [T]he procedure followed in this case **shifts from the trial [court] to the [prospective jurors] responsibility to decide [prospective] juror bias**. Without information bearing on the relevant experiences or associations of

court act within its discretion in conducting voir dire?"; and (2) contending that the "strong feelings" *voir dire* question makes the "victim" *voir dire* question unnecessary. We agree with the State's contention–assuming that the "strong feelings" *voir dire* question is phrased properly. For the below reasons, here, the "strong feelings" *voir dire* question was phrased improperly.

the affected individual [prospective juror]s who were not required to respond, the [trial] court simply does not have the ability, and, therefore, is unable to evaluate whether such [prospective juror]s are capable of conducting themselves impartially. Moreover, the [defendant] is deprived of the ability to challenge any of those [prospective juror]s for cause. Rather than advancing the purpose of voir dire, the form of the challenged inquiries in this case distorts and frustrates it.

Id. at 21, 759 A.2d at 830 (emphasis added).

Just like the phrasing of the *voir dire* questions in Dingle, id. at 5, 759 A.2d at 821, the phrasing of the "strong feelings" *voir dire* question in Shim "shifts from the trial [court] to the [prospective jurors] responsibility to decide [prospective] juror bias." Dingle, 361 Md. at 21, 759 A.2d at 830. In other words, as with the *voir dire* questions' phrasings in Dingle, id. at 5, 759 A.2d at 821, the phrasing of the "strong feelings" *voir dire* question in Shim required each prospective juror to evaluate his or her own potential bias. Specifically, under Shim, 418 Md. at 54, 12 A.3d at 681, each prospective juror decides whether his or her "strong feelings" (if any) about the crime with which the defendant is charged "would [make it] difficult for [the prospective juror] to fairly and impartially weigh the facts." That decision belongs to the trial court, not the prospective juror.

Thus, we hold that, on request, a trial court must ask during *voir dire*: "Do any of you have strong feelings about [the crime with which the defendant is charged]?" We abrogate language in Shim, 418 Md. at 54, 12 A.3d at 681, to the extent that this Court required a trial court to phrase the "strong feelings" *voir dire* question in a way that shifted responsibility to decide a prospective juror's bias from the trial court to the prospective juror, *i.e.*, "'Does any member of the jury panel have **such** strong feelings

about [the charges in this case] **that it would be difficult for you to fairly and impartially weigh the facts**.'" Shim, 418 Md. at 54, 12 A.3d at 681 (emphasis added) (brackets in original).

To be clear, we amend this Court's holding in Shim, id. at 54, 12 A.3d at 681, only in the context of the phrasing of the "strong feelings" *voir dire* question in Shim. We reaffirm this Court's essential holding in Shim that, on request, a trial court must ask during *voir dire* whether any prospective juror has "strong feelings" about the crime with which the defendant is charged. Id. at 54, 12 A.3d at 681. We simply recognize that, in Shim and its parent cases, the "strong feelings" *voir dire* questions' phrasings were at odds with Dingle, 361 Md. at 21, 759 A.2d at 830. See Thomas, 369 Md. at 214, 204, 798 A.2d at 573, 567 (This Court held that the trial court abused its discretion in declining to ask a *voir dire* question that the defendant phrased as follows: "Does any member of the jury panel have such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts at a trial where narcotics violations have been alleged?" (Footnote omitted)); Sweet v. State, 371 Md. 1, 9-10, 806 A.2d 265, 270-71 (2002) (This Court held that the trial court abused its discretion in declining to ask a *voir dire* question that the defendant phrased as follows: "Do the charges [*i.e.*, child molestation] stir up strong emotional feelings in you that would affect your ability to be fair and impartial in this case?"). We note that, although Thomas, Sweet, and Shim postdate Dingle, in none of the three cases did this Court supersede Dingle; in Thomas, Sweet, and Shim, this Court did not address any issue regarding the "strong feelings" *voir dire* questions' phrasings.

At the risk of pointing out the obvious, we stress that we do not hold that a prospective juror is automatically disqualified simply because the prospective juror responds affirmatively to the "strong feelings" *voir dire* question. After the prospective juror is individually questioned by the attorneys or on request by the trial court, the trial court determines whether or not that prospective juror's strong feelings about the crime with which the defendant is charged constitute specific cause for disqualification.

In sum, a trial court need not ask during *voir dire* whether any prospective juror has ever been the victim of a crime, but, on request, a trial court must ask during *voir dire*: "Do any of you have strong feelings about [the crime with which the defendant is charged]?" Thus, here, the circuit court did not abuse its discretion in declining to ask during *voir dire* whether any prospective juror had ever been the victim of a crime, but the circuit court abused its discretion in phrasing the "strong feelings" *voir dire* question as: "Does any member of the panel hold **such** strong feelings regarding violations of the narcotics laws **that it would be difficult for you to fairly and impartially weigh the facts of this trial where narcotics violations have been alleged**?" (Emphasis added).

## II.

Pearson contends that the circuit court abused its discretion in declining to ask during *voir dire* whether any prospective juror had ever been a member of a law enforcement agency.[5] Specifically, Pearson argues that the "member of a law

---

[5]As discussed above, the circuit court abused its discretion in phrasing the "strong feelings" *voir dire* question improperly; nonetheless, we address Pearson's contention that the circuit court abused its discretion in declining to ask during *voir dire* whether any (Continued...)

enforcement agency" *voir dire* question is reasonably likely to reveal specific cause for disqualification.

The State responds that the circuit court did not abuse its discretion in declining to ask during *voir dire* whether any prospective juror had ever been a member of a law enforcement agency. Specifically, the State argues that the "member of a law enforcement agency" *voir dire* question is not reasonably likely to reveal specific cause for disqualification. The State asserts that the "undue weight" *voir dire* question makes the "member of a law enforcement agency" *voir dire* question unnecessary.

---

prospective juror had ever been a member of a law enforcement agency. Generally, where an appellate court reverses a trial court's judgment on one ground, the appellate court does not address other grounds on which the trial court's judgment could be reversed, as such grounds are moot. See, e.g., King v. State, 425 Md. 550, 561, 42 A.3d 549, 556 (2012), reconsideration denied (May 18, 2012), rev'd, 133 S. Ct. 1958 (2013) (This Court resolved one issue in the defendant's favor and "d[id] not reach [the] second [issue] as it bec[a]me[] moot."). An appellate court decides a moot issue, however, where

> the public interest clearly will be hurt if the [issue] is not immediately decided, if the [issue] is likely to recur frequently, and its recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision. . . .

In re Criminal Investigation No. 1-162, 307 Md. 674, 681, 516 A.2d 976, 980 (1986) (ellipsis in original) (citation and internal quotation marks omitted). Here, we decide whether, on request, a trial court must ask during *voir dire* whether any prospective juror has ever been a member of a law enforcement agency, as: (1) the public interest will clearly be hurt if this Court does not decide the issue, which involves the right to an impartial jury; (2) the issue is likely to recur frequently, as the "member of a law enforcement agency" *voir dire* question is proposed regularly; and (3) recurrence of the issue would involve a trial court's duty to ask the "member of a law enforcement agency" *voir dire* question on request.

- 13 -

In <u>Davis v. State</u>, 333 Md. 27, 31, 33, 633 A.2d 867, 869, 870 (1993), this Court held that the trial court did not abuse its discretion in declining to ask during *voir dire* "'whether anyone on the jury has been a member or is a member of the law enforcement community or whether they have a close relative or friend who is such a member[.]'" All of the State's witnesses were members of law enforcement agencies, <u>see</u> <u>id.</u> at 32, 633 A.2d at 869-70; thus, "the sole issue [wa]s the credibility of" members of law enforcement agencies. <u>Id.</u> at 35, 633 A.2d at 871 (internal quotation marks omitted). This Court stated: "The fact that a prospective juror is employed as, related to, or associated with a law enforcement officer does not establish that the prospective juror has any undue bias or prejudice that will prevent [the prospective juror] from fairly and impartially determining the matter before" the prospective juror. <u>Id.</u> at 37, 633 A.2d at 872 (citation omitted).

In a dissenting opinion that Judge John C. Eldridge joined, then-Judge Robert M. Bell opined that the trial court abused its discretion. <u>See</u> <u>id.</u> at 56, 633 A.2d at 881 (Bell, J., dissenting). Judge Bell stated:

> [W]here the sole issue . . . is the credibility of [one] police officer as [o]pposed to [the defendant,] a *voir dire* question concerning law enforcement employment or association may well lead to the disqualification for cause of one or more of the prospective jurors. Such an inquiry need not be extensive and, indeed, in this case, the inquiry sought to be made by the [defendant] can[]not fairly be characterized as extensive and unfocus[ed] questioning . . . [T]he trial court's refusal to make the requested inquiry denied the [defendant] the ability to challenge [prospective] jurors for cause, [and left] the trial [court] without meaningful information concerning [prospective] juror bias [and prejudices] on which to act, and [shifted] to the prospective jurors themselves the responsibility for making the ultimate decision as to their ability to serve on the jury.

Id. at 56-57, 633 A.2d at 881-82 (Bell, J., dissenting) (some alterations and first ellipsis in original) (footnote and internal quotation marks omitted).

Seven years later, in Dingle, 361 Md. at 8-9, 759 A.2d at 823, this Court held that the trial court abused its discretion in asking compound questions during *voir dire*. Writing for this Court, then-Chief Judge Bell approvingly quoted multiple excerpts from his dissent in Davis regarding the law enforcement association question, stating: (1) "while not dispositive of a [prospective juror]'s qualification to serve, as the dissent in *Davis* pointed out, the [prospective juror]'s professional, vocational, or social status 'does tend to prove bias; that a [prospective juror] has been, or is, a member of the group to which the principal witness for the State belongs is relevant to the determination of that [prospective juror]'s partiality or bias[,]'" Dingle, 361 Md. at 16, 759 A.2d at 827 (quoting Davis, 333 Md. at 61, 633 A.2d at 884 (Bell, J., dissenting)); and (2) "[t]he dissent in *Davis* got it right when it pointed out: 'Under the rationale underlying the majority's view of voir dire, taken to its logical conclusion, all that would be necessary to empanel a legally sufficient jury is that the trial court ask the prospective jurors whether they could be fair and impartial . . . .'" Dingle, 361 Md. at 18, 759 A.2d at 828 (quoting Davis, 333 Md. at 63, 633 A.2d at 885 (Bell, J. dissenting)) (paragraph break omitted).

Here, mindful of this Court's holdings in Dingle and Davis, we conclude that, where all of the State's witnesses are members of law enforcement agencies and/or where the basis for a conviction is reasonably likely to be the testimony of members of law enforcement agencies, on request, a trial court must ask during *voir dire*: "Have any of you ever been a member of a law enforcement agency?" Where all of the State's

witnesses are members of law enforcement agencies and/or where the basis for a conviction is reasonably likely to be the testimony of members of law enforcement agencies, a prospective juror's experience as a member of a law enforcement agency has a demonstrably strong correlation with a mental state that could give rise to specific cause for disqualification. See Curtin, 393 Md. at 607, 903 A.2d at 931 (citation and emphasis omitted). Thus, a defendant is entitled to know whether a prospective juror has worked in the law enforcement field if all of the State's witnesses and/or the witnesses whose testimony is reasonably likely to be the basis for a conviction are members of the law enforcement community.

We reject the State's contention that Davis remains good law, as to the propriety of examining jurors on law enforcement experience. In Dingle, this Court quoted approvingly from the dissent in Davis in several instances, essentially incorporating the viewpoint of the Davis dissent, on the law enforcement question, into Dingle. See, e.g., Dingle, 361 Md. at 16, 18, 759 A.2d at 827, 828 (quoting Davis, 333 Md. at 61, 63, 633 A.2d at 884, 885 (Bell, J., dissenting)). Under Dingle, the practice of simply asking during *voir dire* whether prospective jurors can be fair and impartial is improper. Because, in Dingle, we were confronted with an issue that was distinct from the issue in Davis–*i.e.*, Dingle did not involve the propriety of the "member of a law enforcement agency" *voir dire* question–we did not expressly overrule Davis in Dingle. Here, directly addressing the issue of the propriety of the "member of a law enforcement agency" *voir dire* question, having favorably incorporated in Dingle the view expressed by the dissent in Davis, we now overrule the holding in Davis, 333 Md. at 31, 33, 633 A.2d at 869, 870,

regarding the propriety of the "member of a law enforcement agency" *voir dire* question. See Green, 367 Md. at 79, 785 A.2d at 1285. In Davis, 333 at 37, 633 A.2d at 872, we undertook broad consideration of a *voir dire* question involving whether "a prospective juror is employed as, related to, or associated with a law enforcement officer[.]" Here, we hold only that, where all of the State's witnesses are members of law enforcement agencies and/or where the basis for a conviction is reasonably likely to be the testimony of members of law enforcement agencies, a trial court must, upon request, inquire as to whether a prospective juror him or herself is a member of a law enforcement agency. Thus, we overrule Davis only to the extent that a trial court must now, upon request, inquire into a prospective juror's membership in a law enforcement agency in the circumstances outlined above.

Just as with the "strong feelings" question, we stress that we do not hold that a prospective juror is automatically disqualified just because the prospective juror responds affirmatively to the "member of a law enforcement agency" *voir dire* question. After the prospective juror is individually questioned by the attorneys or upon request by the trial court, the trial court determines whether or not the prospective juror's having been a member of a law enforcement agency constitutes specific cause for disqualification. We also do not hold that a trial court is alleviated of the obligation to ask the *voir dire* question asked by the circuit court in this case: "[W]ould any member of the jury panel be inclined to give either more or less weight to the testimony of a police officer than to any other witness in the case, merely because the witness is a police officer?"

In sum, where all of the State's witnesses are members of law enforcement

agencies and/or where the basis for a conviction is reasonably likely to be the testimony of members of law enforcement agencies, on request, a trial court must ask during *voir dire*: "Have any of you ever been a member of a law enforcement agency?" Here, all of the State's witnesses were members of the Baltimore City Police Department. The basis for the convictions was the testimony of members of the Baltimore City Police Department; Officer Faller testified that Pearson was using a razorblade to "cut[] a white rock substance[,]" and Rumber testified that the white rock substance tested positive for cocaine. Thus, for the above reasons, we are satisfied that the circuit court abused its discretion in declining to ask during *voir dire* whether any prospective juror had ever been a member of a law enforcement agency.[6]

---

[6]To be clear, the circuit court did not abuse its discretion in declining to ask during *voir dire* whether any prospective juror's **acquaintance** had ever been a member of a law enforcement agency. As Pearson conceded at oral argument, the proposed *voir dire* questions were "overbroad[.]" See Perry, 344 Md. at 218, 686 A.2d at 281 ("It is even less tenable to argue that a [prospective] juror is disqualified simply because of the experience of a member of the prospective juror's family or on the part of a close personal friend."). Where an overbroad proposed *voir dire* question encompasses a mandatory *voir dire* question, however, a trial court should: (1) rephrase the overbroad proposed *voir dire* question to narrow its scope to that of the mandatory *voir dire* question; and (2) ask the rephrased *voir dire* question. See Shim, 418 Md. at 55, 12 A.3d at 681 ("A proposed *voir dire* question need not be in perfect form, and the [trial] court is free to modify the proposed question as needed." (Citations omitted)). And although we determine that the circuit court abused its discretion in this case, we recognize that in ruling the circuit court judge applied the holding in Shim and the Davis majority opinion.

In addition to providing Pearson with the benefit of the holdings in this case, we determine that our holdings shall apply prospectively as of the date on which this opinion is filed.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THIS CASE TO THAT COURT FOR A NEW TRIAL. THE MAYOR AND CITY COUNCIL OF BALTIMORE TO PAY COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.**

IN THE COURT OF APPEALS OF
MARYLAND

No. 49

September Term, 2013

_____

CERVANTE PEARSON

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

_____

Concurring Opinion by Harrell, J.

_____

Filed: February 21, 2014

I concur in the judgment only. In my view, this case should be the vehicle by which this Court embraces what Judge Raker called for in her concurring opinion (which I joined) in *State v. Thomas*, 369 Md. 202, 217-19, 798 A.2d 566, 574-576 (2002) – expansion of the purpose and use of voir dire to aid in the intelligent exercise of peremptory challenges. The Court's opinion in the present case declines explicitly (Maj. slip op. at 4 n.1) Pearson's invitation to join the vast majority of states and all of the federal circuits, which follow the intelligent exercise approach.[1] As Pearson's brief observes, only California (and, qualifiedly, Pennsylvania) remains as strict as Maryland in its limited use of voir dire solely in aid of discovering grounds for strikes for cause. *See* Nancy S. Forster, *Between A Rock and a Hard Place: Maryland Criminal Defendants, Already Subject to Severely Limited Voir Dire, Now Also Face the Prospect of Anonymous Juries*, 40 U. Balt. L.F. 229, 245 & n.119 (2010). The Majority opinion frets that it would be "imprudent for us to address this far-reaching issue without the benefit of study regarding the possible ramifications." (Maj. slip op. at 4 n.1). I am more sanguine and energetic in my belief that the Court, without delay, should draw upon the experiences of the 48 states and the federal circuits that have gone before us to adopt a suitable format of the "intelligent use" approach in Pearson's case. Although the Rules

---

[1] Although I prefer strongly to embrace in the Court's opinion in Pearson's case the change I advocate, naturally I will not remain aloof from the process suggested by the Majority opinion (Maj. slip op. at 4 n.1) and Judge McDonald's dissent that refers study of the "intelligent use" principle to our Rules Committee and later consideration by the Court.

Committee is one way to address the issue, I, for one, am ready to "do it now" (borrowing former Governor Schaefer's pet phrase).

Circuit Court for Baltimore City
Case No.: 108144026
Argued: January 13, 2014

---

CERVANTE PEARSON

v.

STATE OF MARYLAND

---

Barbera, C.J.
Harrell
Battaglia
Greene
Adkins
McDonald
Watts

JJ.

---

Dissenting Opinion by McDonald, J.,
which Adkins, J., joins

---

Filed: February 21, 2014

As the Majority opinion notes, the trial judge followed this Court's precedent in conducting the voir dire examination. Majority slip op. at p. 18 n. 6. But it seems odd to couple that conclusion with a holding that the judge abused his discretion. *Id.* Perhaps what the Majority means to say is that our precedent led the trial judge astray. But I would not agree with that conclusion and would not reverse the conviction in this case on that ground.

Having said that, I agree with the sentiment expressed by Judge Harrell in his concurring opinion that we should join the vast majority of other states and provide for the pre-trial examination of prospective jurors to include questions, within the discretion of the trial court, that might be more relevant to the exercise of peremptory strikes than challenges for cause. But, as in other states,[1] that can be done by a rule that operates prospectively instead of a court decision with retroactive effect that may result in overturning a conviction in a case in which the trial judge carefully adhered to our precedent and in which the defendant received a fair trial before an impartial jury.

Judge Adkins joins this opinion.

---

[1] *See, e.g.,* Arizona Rule of Criminal Procedure 18.5(e); Delaware Superior Court Standards Relating to Juror Use and Management, Standard 7; Washington Superior Court Criminal Rule 6.4(b). In some states, courts have adopted model voir dire questions or provided examples for specific types of cases for the guidance of trial courts. *See, e.g.,* New Jersey Rules of Court, Directive 4-07. Jury Selection - Model Voir Dire Questions.

1