**Collins v. State, No. 1992 of the 2017 Term, Opinion by Moylan J.**

**<u>VOIR-DIRE</u> QUESTIONING – A FLAWLESS TRIAL – A FIREBELL IN THE NIGHT – AN IMMEDIATE RESPONSE – THE CONTENTION – SIMPLE VERSUS COMPOUND QUESTIONS – THE INITIAL "STRONG FEELINGS" QUESTIONS IN A VACUUM – THE INITIAL COMPOUND QUESTIONS ARE NOT NOW IN A VACUUM – MAY ONE <u>VOIR-DIRE</u> INQUIRY PINCH HIT FOR ANOTHER? – BUT IS THE CONVERSE ALSO TRUE? – LIFE OUTSIDE THE VACUUM REDUX – <u>DÉJÀ VU</u> ALL OVER AGAIN**

Circuit Court for Anne Arundel County
Case No. C-02-17-001278

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1992

September Term, 2017

_____

GORDON ALEXANDER COLLINS

v.

STATE OF MARYLAND

_____

Graeff,
Shaw Geter,
Moylan, Charles E., Jr.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Moylan, J.
Graeff, J., joined in the judgment only.

_____

Filed: August 30, 2018

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Bessie Decker, Clerk
April 20, 2018

In the <u>voir-dire</u> examination of prospective jurors, can a relatively modest glitch in the framing of a single question totally derail an otherwise flawless criminal trial? In addressing that question, the magisterial opinion of Judge Watts in <u>Pearson v. State</u>, 437 Md. 350, 86 A.3d 1232 (2014), will be our Alpha and Omega. The appellant, Gordon Collins, was convicted in the Circuit Court for Anne Arundel County by a jury, presided over by Judge Paul F. Harris, Jr., of both first-degree burglary and the theft of goods with a value under $1,000.

## A Flawless Trial

The trial was as uncontroversial as it was brief. The opening statement for the prosecution ran for three and one-half pages. That of the appellant was a page and one-half long. Two witnesses testified for the State. The testimony of Juliette Tower covered slightly fewer than ten pages in the trial transcript. The testimony of Sergeant Kenneth Brown ran for 22 pages. No one testified for the defense and it offered no evidence. The motion at the end of the State's case, which turned out to be the motion at the end of the entire case, could not have been more innocuous:

> [THE STATE]: The State would rest, thank you.
>
> [DEFENSE COUNSEL]: I would make my motion.
>
> THE COURT: Okay, you want to be heard?
>
> [DEFENSE COUNSEL]: No.
>
> THE COURT: I will deny it. Does your client or any other evidence you are going to –
>
> [DEFENSE COUNSEL]: No.

THE COURT: No evidence?

[DEFENSE COUNSEL]: Correct.

The brief jury instructions were completely boiler-plate, with no objections being lodged by either party either in the course of the jury instructions or at their conclusion. The State's closing argument ran for two and one-half pages in the transcript and its rebuttal for a single page. Defense argument ran for eight pages. The jury returned verdicts of guilty on both charges after deliberating for 40 minutes. This case was a slam-dunk for the prosecution. The only issue before us is that of whether it was fatally flawed before it began.

## A Firebell In The Night

Juliette Tower testified that as of March 17, 2017, she and her husband were living at 801 Severn Avenue in Annapolis. At 11:20 p.m. both Mr. and Mrs. Tower were in bed. He was sleeping and she was trying to fall asleep. She heard a noise downstairs but initially thought that their cat had knocked something over. When the noise persisted "again and again," however, she nudged her husband awake and said, "I think there's somebody downstairs." He got up and ran downstairs. Mrs. Tower followed several minutes behind her husband. She had already called 911, however, before coming downstairs.

The contents of their television room were in disarray, "things scattered all over." All of the cabinets in the kitchen had been opened. Mr. Tower noticed and pointed out to his wife that a window next to the back door had been opened. When Mr. and Mrs. Tower surveyed what, if anything, was missing, the missing items included their son's Xbox, a leather jacket belonging to Mrs. Tower, several games belonging to their son, and their

2

son's headphones. Mrs. Tower later identified these items when they were shown to her by the police.

## An Immediate Response

The only other witness in the case was Sergeant Kenneth Brown. He received a call about a burglary at 11:21 p.m. He responded immediately and, within four minutes, was at the intersection of Wells Avenue and Adams Avenue on his way to 801 Severn Avenue. He saw the appellant, walking toward him and away from Severn Avenue. Sergeant Brown estimated that the spot where he first saw the appellant was less than a five-minute walk from 801 Severn Avenue. The appellant was the only person about. The streets were otherwise empty. The appellant was wearing dark clothing and was carrying a plastic garbage bag, slung over his shoulder.

Sergeant Brown, traveling in an opposite direction, continued past the appellant for approximately one block, executed a three-point U-turn, and drove back toward the appellant. The sergeant was out of direct visual contact with the appellant for about 20 seconds. After the sergeant made his U-turn, he again spotted the appellant in his dark clothing. The plastic garbage bag, however, was gone. The appellant was actually returning to the sidewalk from an area between a parked car and a fence. The appellant was detained for further investigation. Another officer shortly arrived on the scene. Sergeant Brown recovered the plastic garbage bag just over the fence. It contained the Xbox, Mrs. Tower's leather jacket, several games belonging to the Towers' son and the son's headphones. All of these items were identified by Mr. and Mrs. Tower as their property. The appellant offered neither denial nor explanation. The State's case was, indeed, an open and shut one.

## The Contention

The appellant's single appellate contention is framed as follows:

The trial court abused its discretion when it asked the venire two improperly phrased "strong feelings" voir dire questions, and it did not cure the prejudice from that error by subsequently asking the seated, sworn jury properly phrased "strong feelings" questions.

What the appellant wanted were two "strong feelings" questions with respect to the crimes of burglary and theft. The simple and direct "strong feelings" questions he requested were:

1.  Does any member of this panel have strong feelings about the offense of burglary?[1]

2.  Does any member of this panel have strong feelings about the offense of theft?

Instead of getting the questions in that simple form, however, the appellant, to his chagrin, got them in compound form:

1.  Does anyone on this panel have any strong feelings about the offense of burglary to the point where you could not render a fair and impartial verdict based on the evidence?

---

[1] What kind of a question is that? One would assume that the decent and universal answer would be, "Yes, I am against it." Unlike sexual offenses or child abuse or the use of drugs or firearms, there is no apparent emotional baggage attached to prosecutions for burglary or for theft. One might as readily inquire, "Do you have strong feelings for or against crime?"

As a philosophical abstraction, it is hard to imagine why strong feelings against crime or against criminals should disqualify one as a juror. As a practical matter, however, perhaps the <u>voir-dire</u> examination is looking for something other than one's philosophical or moral attitudes toward crime. If, as may be the case, the question is simply a preliminary probe, possibly leading upon further inquiry at the bench to evidence of more personal involvement, there are perhaps, as will be discussed <u>infra</u>, alternative ways of getting to such direct or familial involvement.

2. Does anyone on this panel have any strong feelings about the offense of theft to the point where you could not render a fair and impartial verdict based on the evidence?

Therein lurks the controversy.

## Simple Versus Compound Questions

The semantic sin of the compound question lies in the possible ambiguity of its answer. A "Yes or No" answer to the simple question tells us whether there are or are not "strong feelings." A "No" answer to the compound question, by contrast, does not. It may mean that there are no strong feelings. It may, on the other hand, mean that the prospective juror, indeed, harbors such feelings but feels that he or she can render a fair and impartial verdict despite those feelings. We cannot deduce, from the "Q and A" itself, which end of the compound question generated the negative response.

Lawyers engaged in the process of selecting juries want to know about "strong feelings" and, more particularly, they want to know what life experiences may have produced those "strong feelings." The "strong feelings" themselves, of course, are not ipso facto disqualifying. Pearson, 437 Md. at 364, was emphatic in that regard.

> [W]e stress that we do not hold that a prospective juror is automatically disqualified simply because the prospective juror responds affirmatively to the "strong feelings" voir dire question.

The process, however, does not stop there, simply identifying "strong feelings" as an unadorned abstraction. The initial inquiry is only the threshold or the opening round of a fuller proceeding. The individualized further inquiry at the bench, with attorneys present and participating, will dig far more deeply into the ultimate issue of juror qualification. Pearson further explained:

5

After the prospective juror is individually questioned by the attorneys or on request by the trial court, the trial court determines whether or not that prospective juror's strong feelings about the crime with which the defendant is charged constitute specific cause for disqualification.

Id. (Emphasis supplied). Whatever the judge does or does not do in terms of disqualifying the prospective juror, moreover, the lawyers will know a lot more than they knew before.

In circumstances where a compound question had been asked on voir-dire and the second half of the compound question had asked the prospective juror to appraise his or her ability to render a fair and impartial verdict notwithstanding a compromising circumstance, Dingle v. State, 361 Md. 1, 21, 759 A.2d 819 (2000), condemned the inevitable consequence of allowing the issue of juror qualification to be decided by the juror himself rather than by the trial judge:

[T]he procedure followed in this case shifts from the trial [court] to the [prospective jurors] responsibility to decide [prospective] juror bias. Without information bearing on the relevant experiences or associations of the affected individual [prospective juror]s who were not required to respond, the [trial] court simply does not have the ability, and, therefore, is unable to evaluate whether such [prospective juror]s are capable of conducting themselves impartially. Moreover, the [defendant] is deprived of the ability to challenge any of those [prospective juror]s for cause. Rather than advancing the purpose of voir dire, the form of the challenged inquiries in this case distorts and frustrates it.

(Emphasis supplied). See also Pearson, 437 Md. at 361–63.

### The Initial "Strong Feelings" Questions In A Vacuum

Whereas the underlying voir-dire question in Dingle had been whether the prospective jurors had been the victim of a crime, the underlying voir-dire question in State v. Shim, 418 Md. 37, 12 A.3d 671 (2011), had been, as in this case, whether the prospective jurors had "strong feelings" about a particular crime. Pearson, 437 Md. at 361–63, applied

6

the <u>Dingle</u> rationale about the flaw in the compound question in that case to <u>Shim</u> and condemned the compound question in that context as well.

> [W]e conclude that, <u>here, the "strong feelings" voir dire question</u> (<u>i.e.</u>, "Does any member of the panel hold such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts of this trial where narcotics violations have been alleged?") <u>was phrased improperly.</u>

437 Md. at 361 (emphasis supplied; footnote omitted).

The <u>Dingle</u> rationale, therefore, applies with equal force to either underlying <u>voir-dire</u> question, personal or familial involvement with the crime or "strong feelings" about the crime.

> <u>Just like the phrasing of the voir dire questions in Dingle, the phrasing of the "strong feelings" voir dire question in Shim "shifts from the trial [court] to the [prospective jurors] responsibility to decide [prospective] juror bias."</u> <u>Dingle</u>, 361 Md. at 21. In other words, as with the <u>voir dire</u> questions' phrasings in <u>Dingle</u>, <u>the phrasing of the "strong feelings" voir dire question in Shim required each prospective juror to evaluate his or her own potential bias.</u> Specifically, under <u>Shim</u>, each prospective juror decides whether his or her "strong feelings" (if any) about the crime with which the defendant is charged "would [make it] difficult for [the prospective juror] to fairly and impartially weigh the facts." <u>That decision belongs to the trial court, not the prospective juror.</u>

437 Md. at 362 (emphasis supplied; some internal citations omitted).

Thus, if the two originally posed compound questions inquiring about "strong feelings" with respect to burglary and theft respectively were before us in a vacuum, the appellant would be armed with a very viable contention.

### The Initial Compound Questions Are Not Now In A Vacuum

Those originally posed compound questions, however, did not long remain in a vacuum. They are, as we now look back upon the trial, but part of a larger and more

significant totality. It is, of course, that totality that we review, because our ultimate and primary concern is whether the jury that heard the case against the appellant was qualified to render a fair and impartial verdict. We do not subject either the State or the trial judge to a game of "Gotcha." Judge Greene explained for the Court of Appeals in <u>Washington v. State</u>, 425 Md. 306, 314, 40 A.3d 1017 (2012):

> <u>We review</u> the trial judge's rulings on the record of <u>the voir dire process as a whole</u> for an abuse of discretion, that is, questioning that is not reasonably sufficient to test the jury for bias, partiality, or prejudice.

(Emphasis supplied; citation omitted). <u>See also Pearson</u>, 437 Md. at 356.

As we review the totality of the circumstances, the record as a whole, for everything bearing on the issue of juror disqualification, we find two evidences of doctrinal vitality outside of the initial vacuum. Quite aside from the questions specifically inquiring about "strong feelings," there were other questions designed to root out causes for juror disqualification, even if they appear under different categories. Immediately after the "strong feelings" questions, Judge Harris asked the panel:

> [H]as any member of this panel had something happen to you in the past that would prevent you from either returning a verdict of guilty or not guilty in a criminal case under any circumstances?
>
> Again, we are trying to make sure nobody has <u>any preconceived feelings</u> about any of these issues because, ultimately, I will instruct you that when you render a verdict, it is going to be based only on the evidence that you hear in this case and nothing else.

(Emphasis supplied). No prospective juror responded. Are not "strong feelings" the same as "pre-conceived feelings"?

Judge Harris then asked the panel:

Is there any member of this panel who would allow sympathy, pity, anger or <u>any other emotion</u> to influence your verdict in any way in this case? The verdict should not be based on those feeling[s], they should be based on the evidence.

(Emphasis supplied). No prospective juror responded. Might not a "strong feeling" qualify as "any other emotion"?

Judge Harris then posed the "crime victim question" (in simple not compound form):

Has any member of this panel or your immediate family ever been accused of a crime, been the victim of a crime, or [been] a witness to a crime?

A number of prospective jurors responded. Judge Harris and counsel questioned them further, individually and at the bench. Three jurors were then stricken for cause because, after recounting stories about break-ins, they admitted that those experiences made them unable to judge fairly. One prospective juror said that his wife was an Assistant State's Attorney and described himself as "pro-prosecution." He was excused. Seven other prospective jurors had had some experience with theft, a robbery, or a break-in, but insisted that they could keep an open mind. At the bench, they gave full details of those experiences.

After the compound questions about "strong feelings" were asked, Judge Harris concluded with a catch-all question.

Is there <u>any other reason</u> that we have not already explained or discussed why any member of this panel cannot be a fair and impartial juror in this case, anything that we have not covered?

(Emphasis supplied). No prospective juror responded. Is a "strong feeling" possibly "any other reason"? We are not suggesting that any one of these questions individually passed muster pursuant to <u>Pearson</u>, but only that, under the circumstances of this case, the sheer

9

accumulation of the inquiries in their totality would have brought out anything significant that a direct question about "strong feelings" could have brought out.

We cannot conceive of what ground for disqualification might have been unearthed by a simple, non-compound "strong feelings" question that was not unearthed by the totality of questions that actually were asked in this case. Whatever the compound questions about "strong feelings" may have failed to uncover directly was fully uncovered by the totality of questions that were asked. Everything was explored that reasonably should have been explored, even if by alternative interrogative avenues. That, of course, is the bottom-line goal of the voir-dire examination and not a preference for the simple over the compound question simply as an academic abstraction. We do not foreclose the possibility of some diabolical law-school hypothetical, but, as a practical matter, everything that should have been brought out was brought out. As for the law-school hypothetical, we will not anguish over whether Plato might have been disqualified as a juror based upon some arcane factor other than his own or familial life experiences. We are not administering the voir-dire process as a drill, or as a precise rubric, just for the sake of the drill.

### May One Voir-Dire Inquiry Pinch Hit For Another?

In looking at the totality of the circumstances, our ever-present concern is with whether a voir-dire question that was asked was, essentially, the equivalent of the question at issue that was not asked. In such a case, no harm was done. That issue of equivalency was a key part of the Pearson analysis. In Pearson, the direct voir-dire contention before the Court was not about a prospective juror's "strong feelings" but about whether the

10

prospective juror's status as either the victim of a crime or as a member of a law enforcement agency.   At the very outset of the opinion, Judge Watts posed the core issue:

> We decide whether, on request, a trial court must ask during <u>voir dire</u> whether any prospective juror has ever been: (I) the victim of a crime; or (II) a member of a law enforcement agency.

437 Md. at 354 (emphasis supplied).

In <u>Pearson</u>, the defendant requested a <u>voir-dire</u> question asking whether any prospective juror "had ever been the victim of a crime." 437 Md. at 356. The trial judge declined to ask it. Upon appeal, the "State argue[d] that the 'strong feelings' <u>voir dire</u> questions [that were asked] [made] the 'victim' <u>voir dire</u> question unnecessary." <u>Id</u>.

Conditionally, the Court of Appeals agreed with the State that a "strong feelings" question could, under proper circumstances, render the question about victimhood redundantly unnecessary. Judge Watts's opinion explained:

> [T]his Court has already held that, on request, a trial court must ask during <u>voir dire</u> whether any prospective juror has "strong feelings about" the crime with which the defendant is charged. <u>State v. Shim</u>, 418 Md. 37, 54, 12 A.3d 671, 681 (2011). <u>The "strong feelings" voir dire question makes the "victim" voir dire question unnecessary by revealing the specific cause for disqualification at which the "victim" voir dire question is aimed.</u>

437 Md. at 360 (emphasis supplied; footnote omitted).

The <u>Pearson</u> opinion, however, immediately attached a strict condition to that tentative equivalency. It was the explanation for that condition that produced <u>Pearson</u>'s analysis of the "strong feelings" <u>voir-dire</u> inquiry and <u>Pearson</u>'s holding that a simple question about "strong feelings" is necessary and that a compound question about "strong feelings" is fatally flawed. Thus, the Court's response to the State's argument based on

11

equivalency was that **a properly phrased question** about "strong feelings" is an adequate substitute for a missing question about victimhood, but that **an improperly phrased question** about "strong feelings" is not.

> [The State] contend[ed] that the "strong feelings" <u>voir dire</u> question makes the "victim" <u>voir dire</u> question unnecessary. <u>We agree with the State's contention—assuming that the "strong feelings" voir dire question is phrased properly.</u> For the below reasons, here, <u>the "strong feelings" voir dire question was phrased improperly.</u>

437 Md. at 361 n.4 (emphasis supplied).

### But Is The Converse Also True?

Thus, a properly framed question about "strong feelings" is at least the equivalent of, and therefore an adequate substitute for, a missing question about personal or familial involvement with the crime. But is the converse also true? Is a question about personal or familial involvement the equivalent of, and an adequate substitute for, a missing or improperly phrased question about "strong feelings"?

Equivalency can be a tricky thing. Is the more general question broader and the more specific question narrower? Might it be that a broader question could substitute for a missing narrower question, but that a narrower question would not substitute for a missing broader question? Or are we slicing the analysis too thinly, and should simply accept equivalency as a general truth?

<u>Pearson</u>, of course, had no occasion to deal with its converse, and, therefore, does not answer our question. In our reading of <u>Pearson</u>, however, we find nothing to foreclose the acceptance of the converse. As a practical matter, a prospective juror with "strong feelings" and a prospective juror with some personal or familial experience with a similar

12

crime would both have been called to the bench. They would both have been probed, by court and counsel, about the source of their "strong feelings" or their involvement with the crime. Both lines of inquiry would have led to the same place. It seems to us almost inevitable that both inquiries would have revealed the same underlying circumstances, whichever way the initial question, which triggered the further examination at the bench, had been put. Looking at the totality of this <u>voir-dire</u> examination, we conclude that no critical or dispositive fact was left undiscovered. We see no error.

### Life Outside The Vacuum Redux

Whatever error inhered in the initial posing of the compound question about "strong feelings," the ultimate legitimacy of the <u>voir-dire</u> examination as a totality was redeemed at least twice. The first redemptive measures came, as discussed, in the course of the entirety of the <u>voir-dire</u> questioning. The second came after the jury had been sworn and seated but before any evidence had been presented.

Both the Assistant State's Attorney and the trial judge concluded that the compound question about "strong feelings" may, indeed, have been flawed. In an exercise of caution, Judge Harris, over defense objection, questioned the jurors for a second time.

> I am going to re-ask two questions that we covered earlier but I am going to ask them [in] a slightly different manner.
>
> If either of these apply to you, please let me know, and we will take your response up here privately.
>
> <u>Does any member of this panel have strong feelings about the offense of burglary</u>, is the first question?
>
> (No audible response.)

I see no responses. The next question <u>does any member of this panel have strong feelings about the offense of theft?</u>

(No audible response.)

(Emphasis supplied).

This follow-up questioning occurred before any witness had begun to testify and before any evidence of any kind had been presented. No juror responded to either of the follow-up questions. As <u>Pearson</u> assures us, 437 Md. at 360 n.3, "An appellate court presumes that prospective jurors are honest in deciding whether to respond affirmatively to a <u>voir dire</u> question." Thus, the appellant received, perhaps an hour and one-half later, precisely what he had sought one hour and one-half earlier, a jury competent to return a fair and impartial verdict. Nothing of any critical significance had occurred in that intervening hour and one-half.

Instead of being happy, however, with a jury absolutely free of any "strong feelings," the appellant contends that the later posing of the required questions somehow interfered with his strategic employment of his peremptory challenges. In brief, he argues:

> Here, because the Court refused to ask properly phrased "strong feelings" questions to the entire venire, <u>Mr. Collins was denied his right to exercise his rejections [peremptories?] intelligently and strategically. The court's subsequent decision to ask</u> the seated jury <u>the strong feelings questions</u> approved of by <u>Pearson</u>, therefore, <u>did not cure the prejudice that Mr. Collins suffered</u> from the court's initial error. Accordingly, this Court must hold that the trial court abused its discretion when denied Mr. Collins' request for a mistrial, and it must reverse his convictions as a result.

(Emphasis supplied).

Unfortunately for the appellant, he mounts his argument in the wrong state. Although the law in many jurisdictions might be receptive to the appellant's contention,

14

the law of Maryland is not and never has been. The <u>voir-dire</u> examination in Maryland does not exist, even partially, for the purpose of supplying information to trial counsel that may guide them in the strategic use of their peremptory challenges. Judge Watts's opinion in <u>Pearson</u> could not have been more emphatic.

> <u>Maryland employs "limited voir dire."</u> That is, <u>in Maryland, the sole purpose of voir dire "is</u> to ensure a fair and impartial jury <u>by determining the existence of [specific] cause for disqualification[.]"</u> Unlike in many other jurisdictions, facilitating "the intelligent exercise of peremptory challenges" is not a purpose of voir dire in Maryland. Thus, <u>a trial court need not ask a voir dire question</u> that is "not directed at a specific [cause] for disqualification[ or is] <u>merely 'fishing' for information to assist in the exercise of peremptory challenges[.]"</u>

437 Md. at 356–57 (emphasis supplied; footnote and internal citations omitted).

Thus, the "right" asserted by the appellant does not exist in Maryland. This was, moreover, the only argument even remotely suggested by the appellant to the effect that the later, rather than the earlier, propounding of the "strong feelings" questions in their simple form was not completely adequate to cure whatever flaw might theretofore have existed. We hold that there was no error.[2]

---

[2] At the risk of indulging in overkill, we cannot help but note that the appellant's argument about the possible utility of peremptories may be flawed tactically as well a strategically. His argument asserts a hypothetical.

> Had the trial court asked the entire venire, as it was required to do, whether anyone had "strong feelings" about the crimes of burglary or theft, a number of people almost certainly would have responded. <u>At that point, the court would have been required to ask follow-up questions designed to reveal whether those individuals could nevertheless be fair and impartial.</u> Based on the responses to the follow-up questions, defense counsel may have chosen to use her peremptory challenges differently. <u>As defense counsel explained to the trial court, "[S]ometimes even though they have strong feelings, they appear to be very open minded and able to consider the situation</u>

15

## <u>Déjà Vu</u> All Over Again

Having failed to win an appellate reversal for a trial that was completed, the appellant also contends (without ever having listed it as a contention) that, for precisely the same reason, he should have been awarded a mistrial at the very outset of the trial. Just as his non-viable argument about the more strategic use of peremptory challenges does not entitle him to an appellate reversal of his conviction directly, it would not have entitled him to a mistrial earlier in the proceedings. It is the same argument all over again. For the same reason it failed before, it fails again.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

Judge Graeff joins in the judgment only.

---

<u>independently and you are able to hear those responses. I may have used more strikes</u>, my left-over strikes, <u>to get rid of some of these jurors</u> and put on other jurors that I would have wanted."

(Emphasis supplied).

No hypothetical juror who had given an ambiguous response to the compound question had to be culled out in this case, however, because no juror with "strong feelings" served on this jury. The appellant's hypothetical use of his peremptories, even laser sharp, would never have been aimed at any juror who actually sat on the appellant's panel. The target of the appellant's hypothetical peremptories was the ambiguity inherent in a prospective juror who had "strong feelings" but nonetheless claimed to be able to overcome them. Because none of the actual jurors even had any "strong feelings," however, there was no residual ambiguity that needed to be eliminated.