Gordon Collins v. State of Maryland, No. 54, September Term, 2018

**RIGHT TO FAIR AND IMPARTIAL JURY – *VOIR DIRE* – COMPOUND QUESTIONS – PROPERLY-PHRASED QUESTIONS – "STRONG FEELINGS" QUESTION –** Court of Appeals reaffirmed its holding in Pearson v. State, 437 Md. 350, 354, 86 A.3d 1232, 1234 (2014), that, on request, trial court is required to ask properly-phrased—*i.e.*, non-compound—"strong feelings" question. In other words, under Pearson, during *voir dire*, on request, trial court must ask: "Do any of you have strong feelings about [crime with which defendant is charged]?" Court reiterated that, during *voir dire*, on request, trial court must ask "strong feelings" question in form set forth above, and it is improper for trial court to ask "strong feelings" question in compound form, such as: "Does any member of jury panel have such strong feelings about [charges in this case] that it would be difficult for you to fairly and impartially weigh facts?"

In this case, trial court abused its discretion by asking compound "strong feelings" questions and refusing to ask properly-phrased "strong feelings" questions during *voir dire.* Court declined State's invitation to determine that other questions asked by trial court during *voir dire* could substitute for properly-phrased "strong feelings" questions, and Court held that trial court did not cure its abuse of discretion by asking selected jury properly-phrased "strong feelings" questions after conclusion of *voir dire* and opening statements.

IN THE COURT OF APPEALS

OF MARYLAND

No. 54

September Term, 2018

_____

GORDON COLLINS

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene
McDonald
Watts
Hotten
Getty
Harrell, Jr., Glenn T. (Senior
Judge, Specially Assigned),

JJ.

_____

Opinion by Watts, J.
Harrell, J., concurs.
Barbera, C.J., and McDonald, J., dissent.

_____

Filed: April 2, 2019

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

"*Voir dire*" is Law French[1] for "to speak the truth[,]" and refers to "[a] preliminary examination of a prospective juror by a [trial court] to decide whether [he or she] is qualified and suitable to serve on a jury." *Voir Dire*, Black's Law Dictionary (10th ed. 2014). *Voir dire* is critical to implementing a defendant's right to a fair and impartial jury. See Pearson v. State, 437 Md. 350, 356, 86 A.3d 1232, 1235 (2014).

"[I]n Maryland, the sole purpose of *voir dire* is to ensure a fair and impartial jury by determining the existence of specific cause for disqualification." Id. at 356, 86 A.3d at 1235 (cleaned up). To that end, "[o]n request, a trial court must ask a *voir dire* question if and only if the *voir dire* question is reasonably likely to reveal specific cause for disqualification." Id. at 357, 86 A.3d at 1236 (cleaned up). "There are two categories of specific cause for disqualification: (1) a statute disqualifies a prospective juror; or (2) a collateral matter is reasonably liable to have undue influence over a prospective juror." Id. at 357, 86 A.3d at 1236 (cleaned up). "The latter category is comprised of biases [that are] directly related to the crime, the witnesses, or the defendant." Id. at 357, 86 A.3d at 1236 (cleaned up).

One example of a question that is reasonably likely to reveal bias that is directly related to the crime is what is commonly called the "strong feelings" question—*i.e.*, "'Do any of you have strong feelings about [the crime with which the defendant is charged]?'" Id. at 354, 86 A.3d at 1234 (brackets in original). In Pearson, id. at 363, 86 A.3d at 1239,

---

[1]According to Black's Law Dictionary, Law French is "[t]he corrupted form of the Norman French language . . . that was used for several centuries as the primary language of the English legal system[.]" *Law French*, Black's Law Dictionary (10th ed. 2014).

this Court held that, during *voir dire*, on request, a trial court must ask the "strong feelings" question in the form set forth above, and that it is improper for a trial court to ask the "strong feelings" question in compound form, such as: "'Does any member of the jury panel have such strong feelings about [the charges in this case] that it would be difficult for you to fairly and impartially weigh the facts[?]'" (Cleaned up) (first set of brackets in original). We refer to such a question as "a compound 'strong feelings' question" because it essentially combines two questions: one regarding whether the prospective juror has strong feelings about the charges; and, if so, one regarding whether those strong feelings would make it difficult for the prospective juror to be fair and impartial. See id. at 362, 86 A.3d at 1238-39.

This case requires us to decide whether a trial court abused its discretion where, during *voir dire*, the trial court violated this Court's holding in Pearson by asking compound "strong feelings" questions and refusing to ask properly-phrased—*i.e.*, non-compound—"strong feelings" questions. We must also determine whether other questions that the trial court asked during *voir dire*, such as whether any prospective jurors or any of their immediate relatives had been a victim of a crime or a member of a law enforcement agency, could substitute for properly-phrased "strong feelings" questions; and whether, after the jury was seated and heard opening statements, the trial court cured any abuse of discretion by asking properly-phrased "strong feelings" questions.

In the Circuit Court for Anne Arundel County, the State, Respondent, charged Gordon Collins, Petitioner, with first-degree burglary and theft of property with a value of less than $1,000. During *voir dire*, the circuit court asked the "victim" question and the

"law enforcement agency" question, to each of which multiple prospective jurors responded. The circuit court asked the following compound "strong feelings" questions: "Does anyone on this panel have any strong feelings about the offense of burglary to the point where you could not render a fair and impartial verdict based on the evidence?"; and "Does any member of this panel have strong feelings about the offense of theft to the extent that it would make you unable to be fair and impartial and base your decision only on the evidence in this case[?]" None of the prospective jurors responded to either of the compound "strong feelings" questions. Collins's counsel requested that the circuit court ask properly-phrased "strong feelings" questions, and the circuit court refused.

The jury was seated and sworn, and heard preliminary jury instructions and opening statements. After a recess, the prosecutor advised the circuit court that the compound "strong feelings" questions were improper, and proposed that the circuit court ask the jury properly-phrased "strong feelings" questions. Over Collins's counsel's objection, the circuit court did so. None of the jurors responded.

Before us, Collins contends that the circuit court abused its discretion by asking compound "strong feelings" questions and refusing to ask properly-phrased ones during *voir dire*. Collins argues that other questions that the circuit court asked could not substitute for properly-phrased "strong feelings" questions. Collins asserts that the circuit court did not cure its abuse of discretion by later asking the jury properly-phrased "strong feelings" questions. The State responds that the circuit court did not abuse its discretion because other questions that the circuit court asked during *voir dire* were designed to elicit any potential bias based on the nature of the charges of burglary and/or theft. The State

contends that the circuit court cured any error by later asking the jury properly-phrased "strong feelings" questions.

We reaffirm our holding in Pearson, 437 Md. at 354, 86 A.3d at 1234, that, on request, a trial court is required to ask a properly-phrased—*i.e.*, non-compound—"strong feelings" question. In other words, under Pearson, during *voir dire*, on request, a trial court must ask: "Do any of you have strong feelings about [the crime with which the defendant is charged]?" We reiterate that, during *voir dire*, on request, a trial court must ask the "strong feelings" question in the form set forth above, and it is improper for a trial court to ask the "strong feelings" question in compound form, such as: "Does any member of the jury panel have such strong feelings about [the charges in this case] that it would be difficult for you to fairly and impartially weigh the facts?"

We hold that, in this case, the circuit court abused its discretion by asking compound "strong feelings" questions and refusing to ask properly-phrased "strong feelings" questions during *voir dire*. We decline the State's invitation to determine that other questions that the circuit court asked during *voir dire* could substitute for properly-phrased "strong feelings" questions, and we conclude that the circuit court did not cure its abuse of discretion by later asking the selected jury properly-phrased "strong feelings" questions, after the conclusion of *voir dire* and opening statements.

## BACKGROUND

### *Voir Dire*

On November 2, 2017, Collins, his counsel, the prosecutor, and forty-five prospective jurors appeared before the circuit court. The courtroom clerk swore the

prospective jurors, and the circuit court began to conduct *voir dire*. The circuit court asked whether any prospective jurors knew Collins, his counsel, the prosecutor, the State's witnesses, certain law enforcement officers, or any of their fellow prospective jurors. Multiple prospective jurors responded.[2] The circuit court informed the prospective jurors that the State alleged that, "on or about March 17, 2017, [] Collins committed a first-degree burglary and theft of goods . . . by breaking into the home of Juliette Tower at 801 Severn Avenue in Annapolis . . . with the intent to steal her property." The circuit court asked whether any of the prospective jurors had "heard anything about the facts of this case[,]" whether Tower's address "mean[t] anything to anyone[,]" and whether another address in Annapolis "resonate[d] with anyone[.]" None of the prospective jurors responded. The circuit court asked more questions to which no prospective juror responded, stating:

> THE COURT: General question, has any member of this panel had something happen to you in the past that would prevent you from either returning a verdict of guilty or not guilty in a criminal case under any circumstances?
>
> Again, we are trying to make sure nobody has any preconceived feelings about any of these issues because, ultimately, I will instruct you that[,] when you render a verdict, it is going to based only on the evidence that you hear in this case and nothing else.
>
> (No audible response.)
>
> THE COURT: Does any member of this panel have any political, religious, or philosophical beliefs about our system of criminal justice that would make you hesitate to sit as a juror in this case?
>
> (No audible response.)

---

[2]For brevity's sake, we omit the prospective jurors' responses.

The circuit court asked whether any of the prospective jurors had "ever testified as a witness in a criminal case[.]" Multiple prospective jurors responded. The circuit court asked more questions to which no prospective juror responded, stating:

> THE COURT: Is there any member of this panel who would allow sympathy, pity, anger[,] or any other emotion to influence your verdict in any way in this case? The verdict should not be based on those feeling[s], they should be based on the evidence.
>
> (No audible response.)
>
> THE COURT: The State is required to prove the Defendant guilty beyond a reasonable doubt. Is there any member of this panel who feels that the State must prove its case beyond all doubt? And I will give you an instruction later on what the actual term reasonable doubt means.
>
> (No audible response.)
>
> THE COURT: But, no response. Is there any member of this panel who would allow the possible punishment of the Defendant to influence your verdict in this case?
>
> (No audible response.)

The circuit court asked whether any of the prospective jurors, or any member of their "immediate family[, had] ever been accused of a crime, been the victim of a crime, or been a witness to a crime[.]" Multiple prospective jurors responded. The circuit court judge who presided over the trial asked whether any of the prospective jurors knew him or had had any prior dealings with him. One prospective juror responded. The circuit court asked whether any prospective jurors, any members of their immediate families, or anyone else with whom a prospective juror was "closely acquainted [had] ever been employed by any law enforcement agency[.]" Multiple prospective jurors responded. The circuit court asked whether any of the prospective jurors had ever been a juror in a criminal case.

Multiple prospective jurors responded. The circuit court asked whether any of the prospective jurors would "give either more or less weight to the testimony of a police officer simply because they are a police officer and treat it differently than any other witness[.]" None of the prospective jurors responded. The circuit court asked whether any of the prospective jurors was "a member of the Maryland Crime Victim Resource Center, Maryland Network Against Domestic Violence, Neighborhood Watch, the Stephanie Roper Committee, House of Ruth, Sarah's [H]ouse, YWCA[,] or a similar victim advocacy group[.]" One prospective juror responded. The circuit court asked more questions to which no prospective juror responded, stating:

> THE COURT: Does any member of this panel hold any beliefs related to race, sex, color, religion, national origin, or other personal attributes of the accused or other witnesses that might affect your ability to render a fair and impartial verdict based only on the evidence and the law[?]
>
> (No audible response.)
>
> THE COURT: **Does anyone on this panel have any strong feelings about the offense of burglary to the point where you could not render a fair and impartial verdict based on the evidence?**
>
> (No audible response.)
>
> THE COURT: **Does any member of this panel have strong feelings about the offense of theft to the extent that it would make you unable to be fair and impartial and base your decision only on the evidence in this case[?]**
>
> (No audible response.)

(Emphasis added). Immediately afterward, counsel approached the bench, and the following exchange occurred regarding the compound "strong feelings" questions:

> THE COURT: Anything else?

[COLLINS'S COUNSEL]: I would ask for the question[s] to be asked --

THE COURT: I am not asking [them] that way.

[COLLINS'S COUNSEL]: Okay.

THE COURT: Nobody is going to have good feelings about any crimes. So, it is totally misleading.

[COLLINS'S COUNSEL]: Okay. Can I just put something on the record?

THE COURT: Sure.

[COLLINS'S COUNSEL]: So, the question that I had asked for was[: "]Does any member of this jury panel have strong feelings about the offense of burglary?["]

THE COURT: Right.

[COLLINS'S COUNSEL]: And . . . ["D]oes any member of this panel have strong feelings about the offense of theft?["]

THE COURT: And I simply supplemented it.

[COLLINS'S COUNSEL]: Okay. Could we just note my objection?

THE COURT: Okay[.]

The circuit court asked the following "catchall" question: "Is there any other reason that we have not already explained or discussed why any member of this panel cannot be a fair and impartial juror in this case, anything that we have not covered?" None of the prospective jurors responded.

The circuit court excused three prospective jurors whom it had stricken for cause on

- 8 -

its own initiative.  Collins's counsel exercised four peremptory strikes,[3] and the prosecutor did not exercise any.  Twelve jurors and two alternate jurors were seated.

**Start of Trial**

The courtroom clerk swore the jurors and alternate jurors, the circuit court gave preliminary jury instructions, counsel gave opening statements, and the circuit court recessed for lunch at 11:39 a.m.

At 1:33 p.m., the trial court resumed.  Outside the jury's presence, the prosecutor advised that there was an issue as to the compound "strong feelings" questions.  The prosecutor explained that, "where you basically allow the panel to sort of self-answer and make their own determination as to their fairness and impartiality, it is reversible."  The prosecutor suggested that, instead of declaring a mistrial, the circuit court could ask the jury properly-phrased "strong feelings" questions.  The circuit court asked Collins's counsel whether she believed that that would be an appropriate remedy.  Collins's counsel responded in the negative.  The circuit court asked Collins's counsel whether she thought that there was a remedy at all.  Collins's counsel responded: "I don't think [that] there is . . . [b]ecause the ['strong feelings'] question[s] ha[ve] not been posed to the entire pool of [prospective] jurors."  Collins's counsel explained that, even if the circuit court asked the jury properly-phrased "strong feelings" questions, she still would not know how the other

---

[3]Collins was permitted ten peremptory strikes.  Maryland Rule 4-313(a)(3) provides: "Each defendant who is subject on any single count to a sentence of imprisonment for [twenty] years or more . . . is permitted ten peremptory challenges[.]"  The maximum sentence for first-degree burglary is twenty years.  See Md. Code Ann., Crim. Law (2002, 2012 Repl. Vol.) § 6-202(c).

prospective jurors would have responded to such questions.

The circuit court stated that it would ask the jury properly-phrased "strong feelings" questions. Collins's counsel made a motion for a mistrial, which the circuit court denied. Collins's counsel stated: "[W]e already had opening[ statements], so that also might affect how these jurors respond versus how the [other prospective] jurors might have responded prior to opening[ statements.]" The circuit court responded: "[T]hat is too speculative[,] though. I think [that] the question now is whether the jury [that] we have picked can be fair and impartial[.] But I will leave that part [] of it off. I will simply ask the ['strong feelings'] question[s] as you stated[.]" Collins's counsel stated: "[N]ot only am I moving for a mistrial, I object to the[] jurors being asked those two ['strong feelings'] questions."

The jury returned to the courtroom, and the circuit court addressed it as follows:

THE COURT: Members of the jury, before you hear the first witness, I am going to re-ask two questions that we covered earlier[,] but I am going to ask them [in] a slightly different manner.

If either of these apply to you, please let me know, and we will take your response up here privately.

**Does any member of this panel have strong feelings about the offense of burglary,** is the first question?

(No audible response.)

THE COURT: I see no responses. The next question [is,] **does any member of this panel have strong feelings about the offense of theft?**

(No audible response.)

THE COURT: I see no responses.

(Emphasis added). The circuit court then allowed the State to call its first witness.

- 10 -

**Trial Testimony and Verdicts**

As a witness for the State, Tower testified that, on March 17, 2017, at approximately 11:20 p.m., she and her husband were in bed in their home at 801 Severn Avenue in Annapolis. Tower, who was awake, heard noises. Tower nudged her husband awake and said: "I think there's somebody downstairs." Tower's husband went downstairs. Tower called 911, then went downstairs. Items were "scattered all over" the television room. Tower's Michael Kors jacket, her son's Xbox, a few of his Xbox games, and his headphones were missing.

As a witness for the State, Sergeant Kenneth Brown of the Annapolis Police Department testified that, on March 17, 2017, at 11:21 p.m., he was informed of a report of a burglary at 801 Severn Avenue. Sergeant Brown drove on Wells Avenue towards Adams Street. According to Sergeant Brown, the intersection of Wells Avenue and Adams Street is within five minutes' walking distance from 801 Severn Avenue. To his right, Sergeant Brown saw Collins walking in the opposite direction on the sidewalk on Wells Avenue with a garbage bag over his shoulder. Sergeant Brown reached the intersection of Wells Avenue and Adams Street, made a three-point turn, and started driving back on Wells Avenue. Sergeant Brown saw Collins, who was no longer holding the garbage bag, walk back onto the sidewalk on the south side of Wells Avenue from 408 Adams Street, which is on the corner of Wells Avenue and Adams Street. Then, Collins resumed walking. Sergeant Brown exited his vehicle and spoke to Collins. After another officer arrived, Sergeant Brown checked the other side of a fence on one end of 408 Adams Street, and found a garbage bag that contained a Michael Kors jacket, an Xbox, two Xbox games,

headphones, and an empty cell phone case. Throughout his investigation, Sergeant Brown did not see anyone else in the area besides Collins and the other officer.

After Sergeant Brown finished testifying, the State rested, and Collins rested without offering any evidence. The jury found Collins guilty of first-degree burglary and theft of property with a value of less than $1,000.

## Opinion of the Court of Special Appeals

Collins appealed. On August 30, 2018, the Court of Special Appeals affirmed Collins's convictions. See Collins v. State, 238 Md. App. 545, 561, 192 A.3d 920, 929 (2018). The Court of Special Appeals held that the circuit court did not err during *voir dire*, and, alternatively, that the circuit court cured any error after the jury was seated. See id. at 557-58, 192 A.3d at 927-28. Writing for the panel of the Court of Special Appeals,[4] Judge Charles E. Moylan, Jr. acknowledged that, "if the two originally posed compound questions inquiring about 'strong feelings' with respect to burglary and theft respectively were before us in a vacuum, [Collins] would be armed with a very viable contention." Collins, 238 Md. App. at 552, 192 A.3d at 925. Judge Moylan went on to state: "Those originally posed compound questions, however, did not long remain in a vacuum. They are, as we now look back upon the trial, but part of a larger and more significant totality." Id. at 553, 192 A.3d at 925. Judge Moylan observed that the circuit court asked whether any prospective jurors had "any preconceived feelings about [certain] issues[,]" whether

---

[4]Judge Melanie Shaw Geter joined the majority opinion; Judge Kathryn Grill Graeff joined in the judgment only, and did not write separately. See Collins, 238 Md. App. at 561, 192 A.3d at 929.

- 12 -

they had "any other emotion to influence [their] verdict in any way in this case[,]" whether they had been the victim of a crime, and whether there was "any other reason" why they could not be fair and impartial. See id. at 553-54, 192 A.3d at 925-26. Judge Moylan addressed the significance of these questions—as well as this Court's holding in Pearson, 437 Md. at 363, 86 A.3d at 1239, that compound "strong feelings" questions are improper—as follows:

> We are not suggesting that any one of these questions individually passed muster pursuant to Pearson, but only that, under the circumstances of this case, the sheer accumulation of the inquiries in their totality would have brought out anything significant that a direct question about "strong feelings" could have brought out.
> We cannot conceive of what ground for disqualification might have been unearthed by a simple, non-compound "strong feelings" question that was not unearthed by the totality of questions that actually were asked in this case. Whatever the compound questions about "strong feelings" may have failed to uncover directly was fully uncovered by the totality of questions that were asked. Everything was explored that reasonably should have been explored, even if by alternative interrogative avenues. That, of course, is the bottom-line goal of the voir-dire examination and not a preference for the simple over the compound question simply as an academic abstraction. We do not foreclose the possibility of some diabolical law-school hypothetical, but, as a practical matter, everything that should have been brought out was brought out. As for the law-school hypothetical, we will not anguish over whether Plato might have been disqualified as a juror based upon some arcane factor other than his own or familial life experiences. We are not administering the voir-dire process as a drill, or as a precise rubric, just for the sake of the drill.

Id. at 554-55, 192 A.3d at 926 (underlining in original). Addressing the issue of whether the "victim" question could substitute for the "strong feelings" question, Judge Moylan stated:

> [A] properly framed question about "strong feelings" is at least the equivalent of, and therefore an adequate substitute for, a missing question about personal or familial involvement with the crime. But is the converse also

true? Is a question about personal or familial involvement the equivalent of, and an adequate substitute for, a missing or improperly[-]phrased question about "strong feelings"?

Equivalency can be a tricky thing. Is the more general question broader and the more specific question narrower? Might it be that a broader question could substitute for a missing narrower question, but that a narrower question would not substitute for a missing broader question? Or are we slicing the analysis too thinly, and should simply accept equivalency as a general truth?

Pearson, of course, had no occasion to deal with its converse, and, therefore, does not answer our question. In our reading of Pearson, however, we find nothing to foreclose the acceptance of the converse. As a practical matter, a prospective juror with "strong feelings" and a prospective juror with some personal or familial experience with a similar crime would both have been called to the bench. They would both have been probed, by court and counsel, about the source of their "strong feelings" or their involvement with the crime. Both lines of inquiry would have led to the same place. It seems to us almost inevitable that both inquiries would have revealed the same underlying circumstances, whichever way the initial question, which triggered the further examination at the bench, had been put. Looking at the totality of this voir-dire examination, we conclude that no critical or dispositive fact was left undiscovered.

Collins, 238 Md. App. at 557, 192 A.3d at 927 (underlining in original). Judge Moylan reasoned that, given that the circuit court asked the seated jurors whether they had strong feelings about burglary and/or theft, Collins had "received, perhaps an hour and one-half later, precisely what he had sought one hour and one-half earlier, a jury competent to return a fair and impartial verdict. Nothing of any critical significance had occurred in that intervening hour and one-half." Id. at 558, 192 A.3d at 928.

Finally, Judge Moylan rejected Collins's contention that the circuit court's failure to ask properly-phrased "strong feelings" questions during *voir dire* impaired his purported right to intelligently exercise peremptory strikes, stating:

Unfortunately for [Collins], he mounts his argument in the wrong [S]tate. Although the law in many jurisdictions might be receptive to

- 14 -

[Collins]'s contention, the law of Maryland is not and never has been. The <u>voir-dire</u> examination in Maryland does not exist, even partially, for the purpose of supplying information to trial counsel that may guide them in the strategic use of their peremptory challenges. . . . Thus, the "right" asserted by [Collins] does not exist in Maryland.

<u>Id.</u> at 559-60, 192 A.3d at 928-29 (underlining in original).

## Petition for a Writ of *Certiorari*

On September 26, 2018, Collins petitioned for a writ of *certiorari*, raising the following three issues:

1. . . . . Did the Court of Special Appeals err in this case when it held that the [circuit] court's failure to ask the [prospective jurors] properly[-]phrased "strong feelings" questions was not reversible error in light of the fact that the [circuit] court asked the [prospective jurors] whether [they or] anyone . . . in their immediate family had been the victim of a crime?

2. Did the Court of Special Appeals err in this case when it held that the [circuit] court's failure to ask the [prospective jurors] properly[-]phrased "strong feelings" questions was not reversible error in light of the fact that the [circuit] court asked the [] jury properly[-]phrased "strong feelings" questions after the jury had been sworn and had heard opening statements?

3. Did the Court of Special Appeals err when it held that the [circuit] court's failure to ask the [prospective jurors] properly[-]phrased "strong feelings" questions was not reversible error in light of the fact that the [circuit] court asked a number of other generic questions?

On November 7, 2018, this Court granted the petition. See <u>Collins v. State</u>, 461 Md. 612, 196 A.3d 904 (2018).

## DISCUSSION

### The Parties' Contentions

Collins contends that the circuit court abused its discretion by asking during *voir dire* compound "strong feelings" questions and refusing to ask properly-phrased ones.

- 15 -

Collins argues that, under Pearson, 437 Md. at 363, 86 A.3d at 1239, the compound "strong feelings" questions were improper because they shifted to the prospective jurors the responsibility to determine whether any strong feelings would render them unable to be fair and impartial. Collins asserts that the "victim" question could not substitute for properly-phrased "strong feelings" questions because some prospective jurors may have had strong feelings about burglary and/or theft, even though neither they nor any of their immediate relatives had been victims of crimes. Collins maintains that the "catchall" question—as well as the "something in the past" question and the "sympathy, pity, anger, or any other emotion" question—were compound questions, and thus shifted to the prospective jurors the burden to determine whether they could be fair and impartial.

Collins contends that the circuit court did not cure its abuse of discretion by asking the jury properly-phrased "strong feelings" questions. Collins argues that, when the circuit court asked the selected jury properly-phrased "strong feelings" questions, the jurors—none of whom had responded earlier to the compound "strong feelings" questions—may have been reluctant to respond because they would appear to have changed their answer, or because they would have been embarrassed to respond during the trial, as opposed to during *voir dire*. Collins also asserts that the jurors may have already become invested in this case, and may have formed ideas about the case as a result of the opening statements. Alternatively, despite this Court's case law establishing that *voir dire* does not exist to facilitate the use of peremptory strikes, Collins maintains that the circuit court's failure to ask properly-phrased "strong feelings" questions during *voir dire* impaired his purported right to intelligently exercise peremptory strikes.

The State responds that the circuit court did not abuse its discretion because the questions that the circuit court asked during *voir dire* elicited any potential bias based on the nature of the charges of burglary and/or theft, and made clear which prospective jurors would have responded to properly-phrased "strong feelings" questions. The State contends that the prospective jurors who were most likely to have had strong feelings about burglary and/or theft, yet believed that they could still be fair and impartial, were the prospective jurors who responded to the "victim" question. The State argues that the "victim" question, the "sympathy, pity, anger, or any other emotion" question, and the "something in the past" question ensured that any of the prospective jurors who had experiences with crime were brought to the attention of the circuit court and counsel. The State asserts that, by stating "we are trying to make sure nobody has any preconceived feelings about any of these issues" immediately after asking the "something in the past" question, the circuit court helped ensure that any potential bias would be elicited. The State maintains that this Court should not interpret Pearson, 437 Md. at 363, 86 A.3d at 1239, to require trial courts to follow a precise rubric for *voir dire* questions. The State contends that, in Pearson, the compound "strong feelings" question was improper not necessarily because a trial court must ask the "strong feelings" question in non-compound form, but instead because, in Pearson, the trial court did not ask any other questions that would have elicited the information that a properly-phrased "strong feelings" question would have. The State argues that the circuit court cured any error by asking the jury properly-phrased "strong feelings" questions later.

## Standard of Review

An appellate court reviews for abuse of discretion a trial court's "rulings on the record of the *voir dire* process as a whole[.]" <u>Pearson</u>, 437 Md. at 356, 86 A.3d at 1235 (citation omitted).

## Law

In <u>Dingle v. State</u>, 361 Md. 1, 8-9, 5-6, 759 A.2d 819, 823, 821 (2000), this Court held that a trial court abused its discretion by asking during *voir dire* compound questions, such as: "[H]ave you or any family member or a friend been the victim of a crime, and[,] if the answer to that part of the question is yes, would that fact interfere with your ability to be fair and impartial in this case?" This Court observed that a trial court "must decide whether, and when, cause for disqualification exists for any particular [prospective juror]. That is not a position occupied, or a decision to be made, by . . . the individual [prospective juror]s." <u>Id.</u> at 14-15, 759 A.2d at 826. This Court determined that, in <u>Dingle</u>, the trial court "avoid[ed] examination of each affected [prospective juror] as to the admittedly relevant matters[,] and allow[ed] each such person to make his or her own call as to his or her qualification to serve." <u>Id.</u> at 14, 759 A.2d at 826. In other words, this Court concluded that the compound questions "usurped the [trial] court's responsibility" to "determine, in the final analysis, the fitness of the individual" prospective jurors. <u>Id.</u> at 8-9, 759 A.2d at 823. This Court explained that the compound questions also "deprived [the defendant] of the ability to challenge . . . for cause" any prospective jurors who did not respond to the compound questions because the defendant lacked "information bearing on the relevant experiences or associations of" those prospective jurors. <u>Id.</u> at 21, 759 A.2d at 830. This

Court reiterated that the compound questions interfered with both the trial court's ability to determine whether prospective jurors were biased and the defendant's ability to move to strike prospective jurors for cause, stating:

> Because [the trial court] did not require an answer to be given to the question as to the existence of the status or experience unless accompanied by a statement of partiality, the trial [court] was precluded from discharging [its] responsibility, *i.e.* exercising discretion, and, at the same time, the [defendant] was denied the opportunity to discover and challenge [prospective juror]s who might be biased.

Id. at 17, 759 A.2d at 828.

Despite having expressly disapproved of compound questions in Dingle, in three subsequent cases, this Court held that trial courts abused their discretion by refusing to ask compound "strong feelings" questions. In State v. Thomas, 369 Md. 202, 204-05, 798 A.2d 566, 567-68 (2002), this Court held that a trial court abused its discretion by refusing to ask: "Does any member of the jury panel have such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts at a trial where narcotics violations have been alleged?" (Footnote omitted). In Sweet v. State, 371 Md. 1, 9-10, 806 A.2d 265, 270-71 (2002), this Court held that a trial court abused its discretion by refusing to ask: "Do the charges stir up strong emotional feelings in you that would affect your ability to be fair and impartial in this case?" And, in State v. Shim, 418 Md. 37, 40, 42, 12 A.3d 671, 672-73, 674 (2011), this Court held that a trial court abused its discretion by refusing to ask: "Does any member of the jury panel have such strong feelings concerning the violent death of another human being that you would be unable to render a fair and impartial verdict based solely on the evidence presented?"

Notably, "although Thomas, Sweet, and Shim postdate Dingle, in none of the three cases did this Court supersede Dingle; in Thomas, Sweet, and Shim, this Court did not address any issue regarding the 'strong feelings' [] questions' phrasings." Pearson, 437 Md. at 363-64, 86 A.3d at 1240. In Thomas, 369 Md. at 204 n.1, 798 A.2d at 567 n.1, in a footnote in the background section of this Court's opinion, this Court commented, in *dicta*: "When the inquiry is into the state of mind or attitude of the [prospective jurors] with regard to a particular crime or category of crimes, it is appropriate to phrase the question as was done in this case." This Court did not explain how a compound "strong feelings" question could be permissible under Dingle, or otherwise provide any reasoning for its *dicta*. See Thomas, 369 Md. at 204 n.1, 798 A.2d at 567 n.1. In any event, in Thomas, no issue as to the phrasing of the "strong feelings" question was before this Court, as the defendant specifically requested that the trial court ask the "strong feelings" question in compound form, and the trial court refused; thus, the question was whether the trial court abused its discretion by refusing to ask the "strong feelings" question, not whether the "strong feelings" question was phrased properly. See id. at 204, 798 A.2d at 567.

In Pearson, 437 Md. at 363, 86 A.3d at 1239, this Court overruled Thomas, Sweet, and Shim to the extent that they required a trial court, on request, to ask the "strong feelings" question in compound form, and held "that, on request, a trial court must ask during *voir dire*: 'Do any of you have strong feelings about [the crime with which the defendant is charged]?'" (Brackets in original). This Court "reaffirm[ed] this Court's essential holding in Shim that, on request, a trial court must ask during *voir dire* whether any prospective juror has 'strong feelings' about the crime with which the defendant is

charged." Pearson, 437 Md. at 363, 86 A.3d at 1239. This Court "simply recognize[d] that, in Shim and its parent cases, the 'strong feelings' [] questions' phrasings were at odds with Dingle, 361 Md. at 21, 759 A.2d at 830." Pearson, 437 Md. at 363, 86 A.3d at 1239 (citations omitted). This Court explained why compound "strong feelings" questions are inconsistent with Dingle, stating:

> Just like the phrasing of the [compound] questions in Dingle, [361 Md.] at 5, 759 A.2d at 821, the phrasing of the "strong feelings" [] question in Shim "shifts from the trial [court] to the [prospective jurors] responsibility to decide [prospective] juror bias." Dingle, 361 Md. at 21, 759 A.2d at 830. In other words, as with the [compound] questions' phrasings in Dingle, id. at 5, 759 A.2d at 821, the phrasing of the "strong feelings" [] question in Shim required each prospective juror to evaluate his or her own potential bias. Specifically, under Shim, 418 Md. at 54, 12 A.3d at 681, each prospective juror decides whether his or her "strong feelings" (if any) about the crime with which the defendant is charged "would [make it] difficult for [the prospective juror] to fairly and impartially weigh the facts." That decision belongs to the trial court, not the prospective juror.

Pearson, 437 Md. at 362, 86 A.3d at 1239 (some alterations in original).

In Pearson, id. at 354-55, 86 A.3d at 1234, during *voir dire*, the trial court asked the following compound "strong feelings" question: "Does any member of the panel hold such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts of this trial where narcotics violations have been alleged?" The trial court refused to ask whether any of the prospective jurors knew anyone who had been the victim of a crime, or who had been a member of a law enforcement agency. See id. at 354-55, 86 A.3d at 1234.

Before this Court, the defendant contended that the trial court abused its discretion by refusing to ask the "victim" question. See id. at 356, 86 A.3d at 1235. "[F]or three

- 21 -

reasons, [this Court] conclude[d] that a trial court need not ask during *voir dire* whether any prospective juror has ever been the victim of a crime." Id. at 359, 86 A.3d at 1237. "First, a prospective juror's experience as the victim of a crime lacks a demonstrably strong correlation with a mental state that gives rise to specific cause for disqualification." Id. at 359, 86 A.3d at 1237 (cleaned up). "Second, the 'victim' [] question may consume an enormous amount of time." Id. at 359, 86 A.3d at 1237 (citation omitted). "Third, this Court ha[d] already held that, on request, a trial court must ask during *voir dire* whether any prospective juror has 'strong feelings about' the crime with which the defendant is charged." Id. at 360, 86 A.3d at 1238 (quoting Shim, 418 Md. at 54, 12 A.3d at 681). This Court explained: "The 'strong feelings' [] question makes the 'victim' [] question unnecessary by revealing the specific cause for disqualification at which the 'victim' [] question is aimed"—"assuming that the 'strong feelings' [] question is phrased properly." Pearson, 437 Md. at 360, 361 n.4, 86 A.3d at 1238 & n.4 (footnote omitted). As discussed above, this Court concluded that the "strong feelings" question is phrased properly if and only if it is in non-compound form. See id. at 363, 86 A.3d at 1239. Accordingly, this Court determined that, in Pearson, although the trial court did not abuse its discretion by refusing to ask the "victim" question, the trial court abused its discretion by asking the "strong feelings" question in compound form. See id. at 364, 86 A.3d at 1240.

The defendant also argued that the trial court abused its discretion by refusing to ask the "law enforcement agency" question. See id. at 364, 86 A.3d at 1240. This Court held that:

where all of the State's witnesses are members of law enforcement agencies

and/or where the basis for a conviction is reasonably likely to be the testimony of members of law enforcement agencies, on request, a trial court must ask during *voir dire*: "Have any of you ever been a member of a law enforcement agency?"

Id. at 369, 86 A.3d at 1243. This Court determined that, because all of the State's witnesses in Pearson were law enforcement officers, the trial court abused its discretion by refusing to ask the "law enforcement agency" question. See id. at 369, 86 A.3d at 1243.

**Analysis**

In this case, we reaffirm our holding in Pearson, 437 Md. at 354, 86 A.3d at 1234, that, on request, a trial court is required to ask a properly-phrased—*i.e.*, non-compound— "strong feelings" question. In other words, under Pearson, during *voir dire*, on request, a trial court must ask: "Do any of you have strong feelings about [the crime with which the defendant is charged]?" We reiterate that, during *voir dire*, on request, a trial court must ask the "strong feelings" question in the form set forth above, and it is improper for a trial court to ask the "strong feelings" question in compound form, such as: "Does any member of the jury panel have such strong feelings about [the charges in this case] that it would be difficult for you to fairly and impartially weigh the facts?"

We hold that, in this case, the circuit court abused its discretion by asking compound "strong feelings" questions and refusing to ask properly-phrased "strong feelings" questions during *voir dire*. We decline the State's invitation to determine that the other questions that the circuit court asked during *voir dire* could substitute for properly-phrased "strong feelings" questions, and we hold that the circuit court did not cure its abuse of discretion by later asking the selected jury properly-phrased "strong feelings" questions,

- 23 -

after the conclusion of *voir dire* and opening statements.

By asking compound "strong feelings" questions and refusing to ask properly-phrased ones during *voir dire*, the circuit court prevented *voir dire* from fulfilling its purpose of "ensur[ing] a fair and impartial jury by determining the existence of specific cause for disqualification." Pearson, 437 Md. at 356, 86 A.3d at 1235 (cleaned up). Compound "strong feelings" questions are improper because they "'shift[] from the trial court to the prospective jurors [the] responsibility to decide prospective juror bias.'" Id. at 362, 86 A.3d at 1239 (quoting Dingle, 361 Md. at 21, 759 A.2d at 830) (brackets omitted). Specifically, where a trial court asks a compound "strong feelings" question, "each prospective juror decides whether his or her strong feelings (if any) about the crime with which the defendant is charged would make it difficult for the prospective juror to fairly and impartially weigh the facts." Pearson, 437 Md. at 362, 86 A.3d at 1239 (cleaned up). Compound "strong feelings" questions make it impossible to know whether any prospective juror, in fact, had strong feelings about the crimes with which the defendant was charged, yet determined for him- or herself that he or she could be fair and impartial despite his or her strong feelings. For example, here, although no prospective juror responded to the compound "strong feelings" questions, the record leaves us in the dark regarding whether any prospective juror had strong feelings about burglary and/or theft, but nonetheless judged him- or herself to be able to be fair and impartial.

Critically, by asking compound "strong feelings" questions, the circuit court failed to elicit significant information, in response to which Collins's counsel could have followed up with further questions, and moved to strike prospective jurors for cause. As

this Court explained in <u>Dingle</u>, 361 Md. at 21, 759 A.2d at 830, compound questions "deprive[ the defendant's counsel] of the ability to challenge [certain prospective juror]s for cause" because compound questions fail to elicit "information bearing on the relevant experiences or associations of the [prospective juror]s who were not required to respond[.]" In short, the circuit court should have asked, but failed to ask, properly-phrased "strong feelings" questions during *voir dire*.

Contrary to the position of the State and the Court of Special Appeals, <u>see</u> <u>Collins</u>, 238 Md. App. at 557, 192 A.3d at 927, the "victim" question cannot substitute for a properly-phrased "strong feelings" question. Nor can the "law enforcement agency" question, for that matter. It is possible for a prospective juror to have strong feelings about a particular crime even though neither the prospective juror, nor any of his or her relatives or friends, has ever been a victim of a crime or a member of a law enforcement agency. For example, suppose that, in a murder case, a prospective juror has never been a victim of a crime or a member of a law enforcement agency, and neither have any of the prospective juror's relatives or friends. The prospective juror, however, regularly watches television shows that sensationalize various murders; as a result, the prospective juror has strong feelings about murder. This is simply one of countless examples of prospective jurors who would have strong feelings about a crime, yet would not respond to the "victim" question or the "law enforcement agency" question. The "victim" question is also ineffective as a substitute for a properly-phrased "strong feelings" question where, as here, a trial court asks whether any prospective jurors or their close relatives have been victims of crime, but does not ask whether any prospective jurors' friends have been victims of crime. It is

critical that a trial court ask a properly-phrased "strong feelings" question on request during *voir dire* because, generally speaking, other questions are not as effective at eliciting bias that is directly related to the crime with which the defendant is charged.

Like the "victim" and "law enforcement agency" questions, the other questions that the circuit court asked could not substitute for properly-phrased "strong feelings" questions. The circuit court asked whether any prospective jurors "had something happen to [them] in the past that would prevent [them] from either returning a verdict of guilty or not guilty in a criminal case under any circumstances[.]" Immediately afterward, the circuit court added: "[W]e are trying to make sure nobody has any preconceived feelings about any of these issues because, ultimately, I will instruct you that[,] when you render a verdict, it is going to based only on the evidence that you hear in this case and nothing else." Later, the circuit court asked whether any prospective jurors "would allow sympathy, pity, anger[,] or any other emotion to influence [their] verdict in any way in this case[.]" Immediately afterward, the circuit court added: "The verdict should not be based on those feeling[s], they should be based on the evidence." Still later, the circuit court asked the following "catchall" question: "Is there any other reason that we have not already explained or discussed why any member of this panel cannot be a fair and impartial juror in this case, anything that we have not covered?"

We disagree with the reasoning of the State and the Court of Special Appeals, see Collins, 238 Md. App. at 553-55, 192 A.3d at 925-26, that it is consequential that none of the prospective jurors responded to the "something in the past," "sympathy, pity, anger, or any other emotion," and "catchall" questions. These questions essentially constituted

compound questions because they "'shift[ed] from the trial court to the prospective jurors responsibility to decide prospective juror bias.'" Pearson, 437 Md. at 362, 86 A.3d at 1239 (quoting Dingle, 361 Md. at 21, 759 A.2d at 830) (brackets omitted). The "something in the past" question required the prospective jurors to decide for themselves whether any prior experiences would "prevent" them from reaching a particular verdict "under any circumstances[.]" Similarly, the "sympathy, pity, anger, or any other emotion" question required the prospective jurors to decide for themselves whether any emotion would "influence" the verdicts. Finally, the "catchall" question required the prospective jurors to decide for themselves whether any matter that had not already been covered would prevent them from being "fair and impartial[.]"

Due to the way in which the circuit court phrased these three questions, it is impossible to know whether any prospective juror refrained from responding because, even though he or she was involved with a prior experience, emotion, or other matter that posed a threat to his or her ability to be fair and impartial, the prospective juror determined for him- or herself that the prior experience, emotion, or other matter would not prevent him or her from being fair and impartial. To be clear, a trial court may ask the "something in the past," "sympathy, pity, anger, or any other emotion," and "catchall" questions. Our point with regard to the "something in the past," "sympathy, pity, anger, or any other emotion," and "catchall" questions is that, contrary to the position of the State and the Court of Special Appeals, see Collins, 238 Md. App. at 553-55, 192 A.3d at 925-26, these questions did not substitute for properly-phrased "strong feelings" questions.

On a related note, the State is incorrect in arguing that, in Pearson, the compound

- 27 -

"strong feelings" question was improper not necessarily because a trial court must ask the "strong feelings" question in non-compound form, but instead because, in Pearson, the trial court did not ask any other questions that would have elicited the information that a properly-phrased "strong feelings" question would have. The State misapprehends this Court's holding in Pearson, 437 Md. at 364, 86 A.3d at 1240, which was that the trial "court abused its discretion by phrasing the 'strong feelings' [] question" in compound form. Indeed, the whole point of this Court's holding was to specifically require a trial court, on request, to ask the "strong feelings" question in non-compound form; this Court expressly held that, "on request, a trial court must ask during *voir dire*: 'Do any of you have strong feelings about [the crime with which the defendant is charged]?'" Id. at 364, 86 A.3d at 1240 (brackets in original). Tellingly, in a line of cases that began more than a decade before Pearson, this Court had held that trial courts abused their discretion by refusing to ask compound "strong feelings" questions. See Thomas, 369 Md. at 204-05, 798 A.2d at 567-68; Sweet, 371 Md. at 9-10, 806 A.2d at 270-71; Shim, 418 Md. at 40, 42, 12 A.3d at 672-73, 674. Thus, by the time that this Court decided Pearson, it was already well-established that the "strong feelings" question is mandatory on request. In Pearson, 437 Md. at 362-63, 86 A.3d at 1239, this Court reaffirmed that principle, and determined that, under Dingle, 361 Md. at 21, 759 A.2d at 830, where the "strong feelings" question is requested, a trial court must ask it in non-compound form. In sum, although we understand the Court of Special Appeals's reasoning, we disagree with its determination that "[w]hatever the compound questions about 'strong feelings' may have failed to uncover directly was fully uncovered by the totality of questions that were asked." Collins, 238

Md. App. at 555, 192 A.3d at 926.

Having concluded that the other questions that the circuit court asked during *voir dire* could not substitute for properly-phrased "strong feelings" questions, we now explain why, contrary to the position of the State and the Court of Special Appeals, see Collins, 238 Md. App. at 558, 192 A.3d at 928, the circuit court did not cure its abuse of discretion by later asking the selected jury properly-phrased "strong feelings" questions. To be sure, "[a]n appellate court presumes that prospective jurors are honest in deciding whether to respond affirmatively to a *voir dire* question." Pearson, 437 Md. at 360 n.3, 86 A.3d at 1238 n.3 (citations omitted). That said, in this case, although none of the selected jurors responded to the properly-phrased "strong feelings" questions, multiple circumstances cast doubt on our ability to conclude that the jurors' lack of response would have been the same had the circuit court asked properly-phrased "strong feelings" questions during *voir dire*. For one thing, the circuit court had already asked compound "strong feelings" questions during *voir dire*; and, after the jury was seated, the circuit court prefaced the properly-phrased "strong feelings" questions by stating: "I am going to re-ask two questions that we covered earlier[,] but I am going to ask them [in] a slightly different manner." Under these circumstances, it is not clear that the jurors would have appreciated the difference between the compound "strong feelings" questions and the properly-phrased ones. Despite having been asked properly-phrased "strong feelings" questions later, each juror may have been left with the impression that, as the compound "strong feelings" questions had indicated earlier, even if the juror had strong feelings about burglary and/or theft, he or she did not need to respond if, in his or her view, such strong feelings would not have rendered him or

her unable to be fair and impartial. If there were any jurors who had strong feelings about burglary and/or theft, yet judged themselves to still be able to be fair and impartial, those jurors, after having been exposed to the compound "strong feelings" questions, may have opted not to respond to the properly-phrased "strong feelings" questions later.

Additionally, jurors may have failed to respond because they thought that responding was unnecessary, as the circuit court had previously asked "strong feelings" questions; or, the jurors may have been hesitant to respond because they were concerned about appearing to have changed their response to the "strong feelings" questions. Such hesitation could have been brought about by the circumstance that, when the circuit court asked the jury properly-phrased "strong feelings" questions, the jurors were in a group of fourteen people in the jury box. Accordingly, compared to responding to the compound "strong feelings" questions during *voir dire* in a large group, responding to the properly-phrased "strong feelings" questions during the trial would have drawn much more attention to any responding juror.

By the time that the circuit court asked the jury properly-phrased "strong feelings" questions, the jurors had already been sworn, had already heard preliminary jury instructions, and had already heard opening statements. In other words, the jurors knew that the trial was underway, and that each of them was part of a select group of people who had been chosen to be the triers of fact. As a result, it is reasonable to infer that, at this point, the jurors may have felt invested in this case, and felt obligated to participate in the trial to its conclusion. It would have been obvious that the circuit court might excuse any juror who responded affirmatively to the properly-phrased "strong feelings" questions.

- 30 -

Accordingly, the idea of responding to the properly-phrased "strong feelings" questions may have prompted concerns for the jurors about being relieved of their positions on the jury. Also, a juror may have felt that, if he or she were excused, the time that he or she had spent listening to the preliminary jury instructions and the opening statements would have been a waste.

None of these concerns would have existed during *voir dire*. At that time, none of the prospective jurors knew whether they would be seated as jurors. Additionally, apart from the circuit court's one-sentence summary of the allegations against Collins, none of the prospective jurors knew anything about this case's facts. As a result, during *voir dire*, the prospective jurors were not invested in this case in any way. There were forty-five prospective jurors. Any response to the compound "strong feelings" question while there was a group of forty-five prospective jurors in the gallery during *voir dire* would have generated far less attention than a response to the properly-phrased "strong feelings" questions while there was a group of fourteen jurors in the jury box during the trial. In short, the circumstances that the selected jurors were under when the circuit court asked the jury properly-phrased "strong feelings" questions did not exist during *voir dire*. We cannot conclude that the circuit court court's asking properly-phrased "strong feelings" questions of selected jurors cured any abuse of discretion that was caused by asking the compound "strong feelings" questions during *voir dire*.

In conclusion, asking the selected jury properly-phrased "strong feelings" questions after preliminary jury instructions and opening statements was too little, too late. By the time that the trial was underway, it was impossible to recreate the circumstances that had

existed during *voir dire*, and the circumstances were such that the selected jurors were less likely to disclose the existence of any strong feelings about burglary and/or theft. In other words, we do not share the Court of Special Appeals's certainty that "no juror with 'strong feelings' served on [the] jury." Collins, 238 Md. App. at 560 n.2, 192 A.3d at 929 n.2.[5]

Finally, to be clear, we reject Collins's contention that asking the jury properly-phrased "strong feelings" questions did not cure the circuit court's abuse of discretion because the circuit court's failure to ask such questions during *voir dire* impaired his purported right to intelligently use peremptory strikes. As the Court of Special Appeals aptly explained, Collins "mounts his argument in the wrong [S]tate" because, in Maryland, *voir dire* "does not exist, even partially, for the purpose of supplying information to trial counsel that may guide them in the strategic use of their peremptory challenges." Collins, 238 Md. App. at 559, 192 A.3d at 928. In cases, from as recently as two years ago, see Collins v. State, 452 Md. 614, 622, 158 A.3d 553, 558 (2017), to Pearson, 437 Md. at 356-57, 86 A.3d at 1235-36, to as far back as more than a century ago, see Handy v. State, 101 Md. 39, 43-44, 60 A. 452, 454 (1905), this Court has consistently confirmed that Maryland employs limited *voir dire*—that is, in Maryland, *voir dire*'s sole purpose is to elicit specific

---

[5]Although this Court has applied the doctrine of harmless error to a trial court's decision to ask a particular question during *voir dire*, see State v. Stringfellow, 425 Md. 461, 465, 42 A.3d 27, 29 (2012), curiously, in its brief, the State does not contend that the circuit court's abuse of discretion was harmless. At oral argument, the Assistant Attorney General explained that the State's contention "isn't a 'harmless error' argument, but it's a 'correction of the error' argument[.]" As such, we do not address harmless error. (Continued...)

cause for disqualification, not to aid counsel in the intelligent use of peremptory strikes.[6]

For the above reasons, the circuit court abused its discretion by asking compound "strong feelings" questions and refusing to ask properly-phrased ones during *voir dire*, and the circuit court did not cure its abuse of discretion by asking the jury properly-phrased "strong feelings" questions. We reverse and remand for a new trial. On remand, the circuit court must, on request, ask properly-phrased "strong feelings" questions during *voir dire*.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENTS OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND REMAND TO THAT COURT FOR A NEW TRIAL. ANNE ARUNDEL COUNTY TO PAY COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.**

---

[6]We note that, in his reply brief, Collins expressly states that he "is not asking this Court to adopt an expanded voir dire process[,]" and that, instead, he asserts that the circuit court's abuse of discretion "impaired" "his [purported] right to intelligently . . . exercise his" peremptory strikes. Again, this Court has never recognized such a right.

Circuit Court for Anne Arundel County
Case No. C-02-CR-17-001278
Argued: February 1, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 54

September Term, 2018

_____

GORDON COLLINS

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene
McDonald
Watts
Hotten
Getty
Harrell, Jr., Glenn T. (Senior
Judge, Specially Assigned),

JJ.

_____

Concurring Opinion by Harrell, J.

_____

Filed: April 2, 2019

As I did in my concurrence in *Pearson v. State*, 437 Md. 350, 370-71, 86 A.3d 1232, 1243-44 (2014), I howl anew into an unresponsive void that the present case[1] should be the vehicle by which this Court embraces expansion of the purpose and use of voir dire to aid in the intelligent exercise of peremptory challenges. Perhaps by tackling this problem, the Court could cure or minimize also some of the peculiarities in the present state of the law identified by Judge McDonald in his dissent here (*see* dissent slip op. at 2-5).

The Court received on 15 July 2014 the 185th Report of its Standing Committee on the Rules of Practice & Procedure, which contained a post-*Pearson* analysis and recommendations regarding "intelligent exercise" of peremptory challenges. The Rules Committee recommended that the Court adopt such an approach, thus joining the federal courts and the great majority of the state courts. This report, like my concurrences, seems to have received publicly from the Court only the chirping of crickets in reply. The Court has done nothing (to my admittedly limited knowledge as a Senior Judge who no longer occupies an on-going seat at the table) with the recommendations of the Rules Committee. If it is waiting for a product from the Maryland State Bar Association's special committee (created in 2011) regarding draft pattern criminal voir dire questions, such patience has been expended. The special committee estimated for the Rules Committee in 2014 that it could take up to two years to generate its product. Yet, here we are in 2019 with nothing to consider. Time moves on and the Court should act.

I join the judgment only in this case because the Court has twisted over the years

---

[1] Even though Collins, in his reply brief at 10, eschews asking the Court to entertain this objective in his case. *See also* the Majority slip op. at 32, n.6.

the state of the governing relevant law into a pretzel in obeisance to its historical posture of limited voir dire, such that the majority opinion's reasoning and outcome here appear to be on solid precedential grounds. I confess my earlier sins in joining in that exercise for some time, but I had a "come-to-Jesus" moment in *State v. Thomas*, 369 Md. 202, 217-19, 798 A.2d 566, 574-76 (2002) and find myself advocating since for a new way of thinking.

Circuit Court for Anne Arundel County
Case No. C-02-CR-17-001278
Argued: February 1, 2019

IN THE COURT OF APPEALS

OF MARYLAND

No. 54

September Term, 2018

_____

GORDON COLLINS

v.

STATE OF MARYLAND

_____

Barbera, C.J.
Greene
McDonald
Watts
Hotten
Getty
Harrell, Jr., Glenn T. (Senior
Judge, Specially Assigned),

JJ.

_____

Dissenting Opinion by McDonald, J.,
which Barbera, C.J., joins.

_____

Filed: April 2, 2019

I would affirm the judgment of the Court of Special Appeals in this case and adopt that court's well-reasoned opinion. *Collins v. State*, 238 Md. App. 545 (2018) (Moylan, J.). In that opinion, the intermediate appellate court carefully reviewed the voir dire process as a whole and concluded that the process adequately served the purpose of determining whether there were specific reasons to disqualify prospective jurors.

The Majority Opinion takes a narrower focus. It holds that, upon request, a trial judge must always ask a jury panel "Do any of you have strong feelings about [the crime with which the defendant is charged]?" and may not include in that question any proviso that relates any such "feelings" to the prospective juror's ability to serve fairly and impartially. Majority slip op. at 4. The Majority Opinion holds that the failure to ask the question in its prescribed manner is an abuse of discretion that necessitates reversal of a conviction. *Id*. at 23.

As the Majority Opinion recounts, the trial court in this case asked two "strong feelings" questions related to the charged crimes in the following form: "Does anyone on this panel have any strong feelings about [the offense charged] to the point where you could not render a fair and impartial verdict on the evidence?" Majority slip op. at 7. This was essentially the question that this Court unanimously mandated in 2011 that trial courts ask during voir dire. *State v. Shim*, 418 Md. 37, 54 (2011). A few years later, however, a majority of this Court held that a trial court abused its discretion when it asked the question in that form because it was a compound question that required self-evaluation by the prospective juror. *Pearson v. State*, 437 Md. 350, 356-64 (2014).

There are good reasons to have a general preference against the use of compound

questions during voir dire. A compound question is inherently harder to comprehend. That may be especially true when the question is posed orally in a setting that, for most prospective jurors, is unfamiliar and perhaps intimidating. Moreover, compound questions that ask the prospective juror not only to provide information, but also to evaluate the significance of that information can undermine the purpose of voir dire. For example, in *Dingle v. State*, 361 Md. 1 (2000), the Court held that certain voir dire questions relating to the prospective juror's specific relationships and past experiences[1] should not have been asked in compound form. While the questions themselves asked for specific information from the prospective juror that was amenable to a "yes" or "no" answer – which would allow appropriate follow-up of a "yes" answer – the second part of each question told a prospective juror who would otherwise have answered "yes" that no response was necessary if they felt they could be fair and impartial. This self-evaluation meant that a juror's unstated "yes" response concerning the juror's relevant relationships and experiences could escape follow-up inquiry.

The particular question at issue in this case – concerning "strong feelings" about a type of crime – is a peculiar one. Unlike the questions considered in *Dingle*, it does not ask the juror for specific information about relationships or experiences, but requires the juror's self-evaluation from the outset – What are my feelings about this topic? Are they "strong"?

---

[1] The seven questions at issue in *Dingle* asked whether the prospective juror (or a friend or family member) had been a victim of a crime, accused of a crime, a witness in a criminal case, a juror in a criminal case, a member of a victims' rights group, a lawyer or law student, or associated with a law enforcement agency. *Dingle*, 361 Md. at 4 n.4.

Suppose the crime charged happens to be murder, or rape, or child abuse. Under the rule applied by the Majority Opinion, a trial court is bound to ask simply whether any members of the jury venire "have strong feelings" about murder, or rape, or child abuse. It is quite possible that an entire jury venire would respond affirmatively to such a question. In a sense, society collectively has "strong feelings" about such conduct – that's why such conduct has been classified as criminal. A prospective juror who does not have "strong feelings" about such crimes may well be suspect. One would think that it would be more appropriate to ask follow-up questions of those potential jurors who do *not* stand or raise their hands in response to such a question.

Perhaps such a question is meant to ferret out whether a prospective juror has *stronger* feelings than most people about a particular type of crime; if so, it presumably should be phrased in that way. But, again, that would require the individual panel member to evaluate his or her own feelings and then compare those feelings to some hypothetical benchmark. In any event, asking prospective jurors whether they have "strong feelings" by definition requires them to do a self-evaluation and not simply to reveal information about relationships, present status, or past experiences.

It is perhaps not surprising that other jurisdictions that mandate open-ended questions in voir dire and that discourage compound questions have not reached the same conclusion as the Majority Opinion. An example may be found in the model voir dire questions promulgated by the New Jersey Supreme Court. New Jersey Supreme Court Directive #4-07 (May 16, 2007). That directive expresses a strong preference for open-ended voir dire questions. *Id*. at 4-5. However, among the mandatory standard voir dire

questions is the following:

> 11.    Is there anything about the nature of the charge itself that would interfere with your impartiality?

*Id.*, Model Jury Selection Questions – Standard Jury Voir Dire – Criminal, at p. 3.  Under the Majority Opinion in this case, such a question would be considered a forbidden compound question that would result in reversal of a conviction.

Another interesting contrast to the Majority Opinion is the approach of the United States Court of Appeals for the District of Columbia Circuit.  Like this Court, the United States Court of Appeals for the District of Columbia Circuit has held that a trial court's use of compound questions during voir dire denied a defendant a "full and fair opportunity to expose bias or prejudice" in the jury panel and, for that reason, vacated the defendant's conviction.  *United States v. Littlejohn*, 489 F.3d 1335 (D.C. Cir. 2007).  But the basis of that holding was very different from the one in this case.

During jury selection in *Littlejohn*, the trial court had asked the panel compound voir dire questions concerning (1) any relationship to law enforcement officers; (2) acquaintance with other members of the jury panel; (3) employment by a criminal defense attorney; (4) whether the prospective juror was a lawyer or law student; (5) previous service as a grand juror; (6) previous service as a juror.  489 F.3d at 1341.[2]  The second part of each compound question asked whether, if the prospective juror had such a relationship, acquaintance, legal knowledge, or past experience, it would affect his or her ability to be a

---

[2] As is evident these are very similar to the questions that this Court found problematic in *Dingle*.  *See* footnote 1 above.

fair and impartial juror in the case. *Id.* Note that, as in *Dingle*, each of those questions concerns a prospective juror's relationships, present status, and past experiences. And, again like *Dingle*, none of the questions concerned "strong feelings" about the crime charged.

But, unlike the Majority Opinion in this case, the United States Court of Appeals for the District of Columbia Circuit does not condemn all compound questions indiscriminately. Indeed, that court has specifically endorsed a "kitchen sink" question at the end of the voir dire process in which a trial court invites individual panel members to come forward if there is "any reason that you can think of, even though we have not covered it in a question, that you believe is a basis for your inability to sit fairly, attentively, and impartially if selected as a juror." *United States v. West*, 458 F.3d 1, 7 (D.C. Cir. 2006) (Garland, J.). Such a question might be criticized as compound and inviting self-evaluation by the prospective juror, but the District of Columbia Circuit deemed it "important" because it requires each juror to consider the oath that the juror has taken and to respond if the prospective juror feels that any aspect of the case might affect the juror's impartiality. *Id.*

Perhaps my research is wanting, but I could not find any other jurisdiction in which an appellate court has reversed a conviction because the trial court asked the voir dire question on which the Court reverses this conviction.

In my view, the opinion of the Court of Special Appeals applies the holding of *Pearson* in a sensible way that honors the underlying concern about the biases and prejudices that voir dire seeks to expose, as well as the concern about juror self-evaluation.

Chief Judge Barbera has advised that she joins this opinion.